**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Margarito NUNEZ, Defendant–Appellant.**

**No. 91–2752.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1992.

Decided March 25, 1992.

---

Barry R. Elden, Asst. U.S. Atty. and Haywood E. McDuffie (argued), Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Kenneth H. Hanson (argued), Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, CUMMINGS and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

On January 23, 1991, Margarito Nunez pleaded guilty to possession with intent to distribute approximately 1,000 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and attempt to distribute 500 grams of a mixture containing cocaine in violation of 21 U.S.C. § 846. Nunez acknowledged that there was no plea agreement, that is, that his was a "blind plea." The district court questioned Nunez pursuant to Rule 11 of the Federal Rules of Criminal Procedure to ensure that his plea was knowing and voluntary. Nunez admitted the possession and attempted sale of one-half kilogram of cocaine on October 11, 1990, and the possession of an additional one-half kilogram at his home. The district court then accepted Nunez's guilty plea.

Two days before sentencing, Nunez filed a motion to withdraw his plea. Nunez did not deny his guilt of crimes charged. Instead, he challenged the use of uncharged drug sales in the probation report for sentencing purposes. The district court denied the motion and, following the sentencing

hearing, sentenced Nunez to 135 months imprisonment, five years of supervised release, and a special assessment of one-hundred dollars. On July 23, 1991, Nunez filed notice appealing his sentence.

On appeal, Nunez raises four claims: (1) that the district court erred by considering uncharged cocaine transactions as relevant conduct in determining his sentence; (2) that the district court improperly applied the Sentencing Guidelines; (3) that the government entrapped Nunez in obtaining the narcotics conviction; and (4) that the district court improperly considered Nunez's proffer statement during sentencing. None of these claims has merit. We dispose of each in turn.

Nunez first argues that the district court improperly considered prior, uncharged drug sales under the label "related conduct" for sentencing purposes. Nunez claims that the district court erred in determining the appropriate adjusted offense level under the Guidelines by including the cocaine he allegedly sold before the transactions described in the indictment. We hold that neither the evidence presented to the district court at the sentencing hearing, nor the related case law support Nunez's restrictive interpretation of "relevant conduct" under the Guidelines.

■ At the outset, we note that we review challenges to sentencing decisions of district court judges under a deferential standard. *United States v. Boyer*, 931 F.2d 1201, 1203–04 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 209, 116 L.Ed.2d 167 (1991). To the extent that the sentencing decision involves questions of fact, we will not disturb the district court's findings unless we are left with the definite and firm conviction that a mistake has been made. *Id.* at 1204 (quotations omitted). *See also United States v. Franklin*, 896 F.2d 1063, 1066 (7th Cir.1990). A district court's determination that certain behavior amounts to "relevant conduct" for sentencing purposes under the Guidelines is a factual finding, *United States v. Lawrence*, 915 F.2d 402, 406 (8th Cir.1990), and thus, only will be disturbed if clearly erroneous.

■ Sentencing Guideline § 1B1.3(a)(2), entitled "Relevant Conduct (Factors that Determine the Guideline Range)," provides that, with a narcotics conviction, the district court should determine the base offense level for sentencing purposes by considering "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." The Commentary to Guideline § 1B1.3(a)(2) explains that, "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction."

In the instant case, the record demonstrates that the district court carefully considered the issues surrounding Nunez's "relevant conduct." At the sentencing hearing, Nunez admitted to supplying a single customer, one Randy Long (who later became a confidential informant for the government), with cocaine since 1986. *See* Transcript of Proceedings, Sentencing Hearing, July 17, 1991 ("July Trans.") at 45. Nunez described how he sold cocaine to Long from 1986 to 1988, and then again in 1990, leading to his arrest on October 11 of that year. *See id.* at 45–48. Only Long's disappearance from 1988 to 1990, apparently due to his arrest and imprisonment, prevented Nunez from supplying him with cocaine during that period. *See id.*

Nunez admitted to "ten or twelve" sales of cocaine to Long for an approximate total weight of at least three kilos. *See id.* at 61. This admission essentially corroborated the testimony of the government agent. The only disparity concerned the total amount of cocaine that Nunez sold to Long. The agent claimed that Nunez had informed him on a prior occasion that the total volume of cocaine sold to Long was between six to eight kilograms. *See id.* at 31. The district court found that the agent's testimony was more credible than Nunez's, and sentenced Nunez on the basis of six to eight kilos of cocaine:

> [I]t is interesting to note that the agent apparently got everything right that Mr. Nunez said in the post-arrest statement

in repeating it here other than the quantities involved, which makes it quite suspect as to what was said.... So, all things considered, his own testimony takes us up to three kilos, but I must say that taking all of this evidence—and particularly what he told the agent at the time of his arrest, when the quantities were not significant in terms of punishment—six to eight [kilos] came out before any guidelines were under consideration.... Probably six to eight kilos is a modest amount. It is probably more than that. But it seems to me at a minimum, it is at least that—six to eight kilos. I think he did tell the agent that. It squares with his own testimony here, in terms of the frequency of the deals and the amounts....

July Trans. at 62–63.

Thus, supported by Nunez's own admissions, the district court properly concluded that *all* of Nunez's sales of cocaine to Long, which it determined to involve six to eight kilograms, amounted to the same course of conduct. We have held on numerous occasions that this practice of considering unindicted conduct for sentencing purposes, referred to as the "aggregation rule," is acceptable, even mandated, under §§ 1B1.3(a)(2) and 3D1.2(d) of the Guidelines. *United States v. Duarte*, 950 F.2d 1255, 1263 (7th Cir.1991). Given our prior decisions upholding the aggregation rule for behavior that is part of a common scheme or course of conduct, we have no difficulty holding, in the instant case, that the district court appropriately included Nunez's prior, unindicted sales of cocaine to Long as "relevant conduct." *See id.* (collecting cases).

█ Nunez next argues that the district court improperly applied the Guidelines by giving Nunez a two-level enhancement for possession of a firearm during the commission of a narcotics offense. Guidelines § 2D1.1(b) provides that "[i]f a dangerous weapon (including firearm) was possessed during commission of the offense, increase by two levels." Despite the clarity of this language, Nunez asserts that, because the government voluntarily dismissed the two gun counts originally contained in the indictment, the district court should not have permitted the gun charges to affect his sentence. *See* Appellant's Brief at 7. Nunez apparently misunderstands the difference between a charged offense and a sentence enhancement under the Guidelines. The district court made the following findings:

> I do not believe [Nunez] when he is, in effect, saying that the possession of these weapons were entirely innocent.... You look at this gun and you look at this barrel and you look at the capacity of it and it is entirely consistent with the idea that Mr. Nunez is dealing in a lot of dope.... The government decided not to charge the carrying of the weapon and [Nunez] did not have it on his person during the deal, and maybe that is the reason. In any event, I do not think the government is conceding ... that he never possessed it during the commission of the offense; possessed it in the sense that he had control of it while it was at his house, which I think is sufficient as constructive possession. And, two, it is not part of any agreement which is being breached by now raising it as a reason to increase the level by two.

Trans. at 64–65.

These findings demonstrate that the district court's decision to enhance Nunez's sentence is entirely consistent with the Guidelines Application Note: "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." Guidelines § 2D1.1(b)(1), Application Note 3.

The evidence presented at the sentencing hearing fully supports the district court's conclusion. After all, law enforcement officers uncovered two handguns (a .38 caliber revolver and .9 millimeter pistol) when they seized one-half kilogram of cocaine from Nunez's home. The .38 was loaded when seized and the .9 millimeter was found with two partially loaded clips lying

nearby. These weapons surely do not fit the "unloaded hunting rifle" exception provided in the Guidelines Application Note. Moreover, there was no agreement between Nunez and the government concerning the dismissed counts. The government dismissed the counts based on its evaluation of the charges and did not promise not to seek enhancement at sentencing. *See* Trans. at 13–14, 64–65.

■ Most notably, other than a few self-serving comments at the sentencing hearing, Nunez is unable to offer any evidence that the connection between the guns and his cocaine sales was "clearly improbable." On the contrary, the type and location of the seized guns suggests that they were used in connection with Nunez's drug business. This inference has ample support. *See United States v. Franklin*, 896 F.2d 1063 (7th Cir.1990) (enhancement affirmed where agents found three loaded handguns and over one kilogram of cocaine in defendant's residence while arrest occurred elsewhere). *See also United States v. Restrepo*, 884 F.2d 1294 (9th Cir.1989) (enhancement affirmed where agents found loaded pistol hidden beneath mattress at same location as cocaine). *Cf. United States v. Edwards*, 940 F.2d 1061, 1064 (7th Cir. 1991) (district court's enhancement reversed where agents found unloaded rifle and loaded handgun at a location several miles from where the narcotics were stored). In the instant case, the guns were discovered in the same locale as the cocaine, making it reasonable to conclude that the firearms were employed in drug dealing. Thus, we have no doubt that the district court appropriately enhanced Nunez's sentence.

■ Nunez's final two challenges merit far less attention. Nunez claims that the government "entrapped him" in obtaining the narcotics conviction. We are rather baffled by this argument. Surely, Nunez's counsel must realize that Nunez's plea of guilty waives any defense he might have offered at trial. *See Eaton v. United States*, 458 F.2d 704, 707 (7th Cir.) ("[I]t is well settled that a defendant's plea of guilty admits, in legal effect, the facts as charged and waives all non-jurisdictional

defenses. Entrapment is a non-jurisdictional defense on the merits and petitioners have waived their right to assert it."), *cert. denied*, 409 U.S. 880, 93 S.Ct. 208, 34 L.Ed.2d 135 (1972). Here, Nunez made a "blind" plea; that is, there was no agreement with the government. The district court carefully informed Nunez of the consequences of his plea. *See* Transcript of Proceedings, January 23, 1991 ("January Trans.") at 6–9. Nunez even described in his own words the offenses he had committed. *See id.* at 19–22. At sentencing, the district court specifically found that Nunez was not entrapped and that the government's confidential informant had not overborne Nunez's will. *See* July Trans. at 59. That conclusion is supported amply by the record.

Nunez's final challenge similarly lacks merit. Nunez argues that the district court improperly considered his proffer statement during sentencing. Nunez simply mischaracterizes the record. During the sentencing hearing, the district court specifically foreclosed any evidence from the proffer statement and declared it "off limits." *Id.* at 35. The government did not introduce, and the district court did not consider any of the information Nunez gave in his proffer statement.

Thus, for the foregoing reasons, we AFFIRM Nunez's conviction and sentence.