974 F.2d 1340
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Ramon ESPINOSA-GUERRERO, Defendant/Appellant.
 No. 91-2931.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 15, 1992.*
Decided July 24, 1992.
 
 Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted Ramon Espinosa-Guerrero of conspiracy to possess with intent to distribute cocaine, possession with intent to distribute two kilograms of cocaine, and distribution of cocaine. 21 U.S.C. §§ 841(a)(1) and 846. The district court sentenced him under the Sentencing Guidelines to 188 months' imprisonment to be followed by four years' supervised release. On appeal, Mr. Espinosa-Guerrero challenges only his sentence. We vacate his sentence and remand for resentencing in accordance with this order.
 
 
 2
 Mr. Espinosa-Guerrero's arrest was the fruition of undercover work by the government and its informants, James and Robert Froelich. Mr. Espinosa-Guerrero met the Froelich brothers in early 1980 after he married their sister, Joanne. In 1981, Mr. Espinosa-Guerrero and Robert Froelich began distributing cocaine in Milwaukee, Wisconsin. Mr. Espinosa-Guerrero would bring the cocaine from New York to Milwaukee and Robert would then sell the cocaine in Milwaukee. This relationship continued until 1983, when Robert was arrested for possession of cocaine. His arrest and the resulting seizure of cocaine cost Mr. Espinosa-Guerrero over $30,000.
 
 
 3
 Robert was released from prison in 1986. Still deeply in debt to Mr. Espinosa-Guerrero for the lost cocaine, Robert again began to sell cocaine for Mr. Espinosa-Guerrero. This time he enlisted his brother James. But, by 1987, the situation reeled out of control. Robert, James, and Joanne Froelich were using cocaine heavily, Robert's cocaine debt still had not been paid, and Mr. Espinosa-Guerrero began threatening the Froelich brothers.
 
 
 4
 Faced with this difficult situation, the Froelich brothers, on the advice of their attorney, turned to the Drug Enforcement Agency ("DEA"). They told DEA agents about their relationship with Mr. Espinosa-Guerrero. James agreed to act as a confidential informant and set up a controlled drug buy between himself and Mr. Espinosa-Guerrero. On January 11, 1988, James met with Mr. Espinosa-Guerrero at the Hampton Inn Hotel to negotiate a drug buy. At the conclusion of their meeting, Mr. Espinosa-Guerrero agreed to sell James three kilograms of cocaine and sent two of his couriers to New York to pick up the cocaine.
 
 
 5
 Mr. Espinosa-Guerrero remained in his room at the Hampton Hotel for the rest of that day to check the status of the drug deal. Later that evening, James and Mr. Espinosa-Guerrero went to the airport to meet the couriers with the cocaine. DEA agents were also at the airport awaiting the arrival of the cocaine. The agents observed the two couriers deplane, meet Mr. Espinosa-Guerrero, exit the terminal, and proceed to James' car--at which point DEA agents immediately arrested the couriers and Mr. Espinosa-Guerrero. A search of the couriers' luggage revealed that each courier was carrying one kilogram of cocaine.
 
 
 6
 Mr. Espinosa-Guerrero first challenges the district court's calculation of his base offense level. At sentencing, Robert Froelich testified against Mr. Espinosa-Guerrero. After hearing Robert's testimony and arguments from both sides, the district court found that Mr. Espinosa-Guerrero was responsible for at least five kilograms of cocaine, yielding a base offense level of 32. See U.S.S.G. § 2D1.1(c)(6) (at least five but less than fifteen kilograms of cocaine). The district court then increased Mr. Espinosa-Guerrero's base offense level by two points up to level 34 for possession of a weapon. Mr. Espinosa-Guerrero's base offense level of 34 and his criminal history category of III resulted in a sentencing range of 188 to 235 months' incarceration. Mr. Espinosa-Guererro argues that the evidence shows that his total offense conduct only involved 2 kilograms of cocaine, the amount of cocaine contained in the indictment.
 
 
 7
 Sentencing Guideline § 1B1.3(a)(2), entitled "Relevant Conduct (Factors that Determine the Guideline Range)," directs the district court in computing a defendant's base offense level to aggregate amounts of drugs from any acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction," even if the defendant was not convicted of possession or distribution of the additional amounts. United States v. Nunez, 958 F.2d 196, 198 (1992); United States v. Duarte, 950 F.2d 1255, 1263 (7th Cir.1991); United States v. Jewel, 947 F.2d 224, 233 (7th Cir.1991). The district court's factual determination that Mr. Espinosa-Guerrero's "Relevant Conduct" involved at least five kilograms of cocaine is reviewed under a deferential standard, and thus, will be reversed only if it is clearly erroneous. United States v. Clea, No. 91-1492, slip op. at 6 (7th Cir. May 14, 1992).
 
 
 8
 The district court did not clearly err in determining that Mr. Espinosa-Guerrero's offense conduct involved at least five kilograms of cocaine. At the sentencing hearing, Robert Froelich testified that Mr. Espinosa-Guererro received his cocaine from sources in Columbia and New York and that he began purchasing cocaine from Mr. Espinosa-Guerrero for distribution in Milwaukee in 1981. Robert estimated that, from 1981 until he was arrested in 1983, Mr. Espinosa-Guererro supplied him with at least five to ten kilograms of cocaine. Additionally, Robert testified that after his release from prison in 1986 he purchased at least one kilogram of cocaine from Mr. Espinosa-Guerrero. Finally, Robert testified that from 1990 to 1991 he received four kilograms of cocaine from Mr. Espinosa-Guerrero.
 
 
 9
 Mr. Espinosa-Guerrero contends that because Robert's testimony was uncorroborated, it was insufficient to support the district court's determination of drug quantity. Initially, the standard for resolving factual disputes at sentencing is a preponderance of the evidence. Duarte, 950 F.2d at 1263. Thus, it was the government's burden to demonstrate by a preponderance of the evidence that Mr. Espinosa-Guerrero's offense conduct involved more than the amount of cocaine charged in the indictment. To that end, the government presented Robert's testimony. Robert's testimony, even uncorroborated, is sufficient to meet the government's burden. Cf. United States v. Beverly, 913 F.2d 337, 358 (7th Cir.1990) (uncorroborated and circumstantial testimony is sufficient to support a verdict).[1] Regarding Mr. Espinosa-Guerrero's challenge to the district court's determination, albeit reluctant, that Robert was a credible witness, we note that this determination is virtually unreviewable and will be disturbed only in extraordinary circumstances, none of which are present in this case. United States v. Cardona-Rivera, 904 F.2d 1149, 1152-53 (7th Cir.1990) (listing circumstances).
 
 
 10
 In the alternative, Mr. Espinosa-Guerrero claims that the district court could not aggregate the amounts of cocaine from the transactions occurring in 1981-1983, 1986-1987, and 1990-91,[2] because they were not part of the same common scheme or plan as the charged offenses. Mr. Espinosa-Guerrero was charged with and convicted of conspiracy and possession offenses involving two kilograms of cocaine, occurring in Milwaukee, Wisconsin and taking place approximately from January 11 until January 12, 1988. The course of conduct charged in the indictment involved Mr. Espinosa-Guerrero transporting kilogram quantities of cocaine from New York City, either by himself or through couriers, to Robert Froelich in Milwaukee for sale and distribution. All the cocaine transactions, charged or uncharged, involved the same parties, the same geographical location, and were interrupted only by Robert's imprisonment in 1983. See Nunez. 958 F.2d at 198-99 (unindicted cocaine transactions that occurred from 1986-1988 and 1990 "amounted to same course of conduct" as defendant's 1990 conviction because all sales were made to the same buyer and were temporarily suspended only by the buyer's imprisonment); Duarte, 950 F.2d at 1264-65 (discussing the importance of temporal and geographic relationship between charged and uncharged conduct); United States v. White, 888 F.2d 490, 500 (7th Cir.1989) (1988 drug transaction was not clearly related to charged 1986 conspiracy because source of cocaine, conspirators, and customers differed). Thus, the record supports the district court's finding that the uncharged cocaine transactions, which it determined to involve at least five kilograms, amounted to the same course of conduct as the charged offense.
 
 
 11
 Mr. Espinosa-Guerrero next contends that the district court erred when it enhanced his base offense level by two levels for possession of a firearm during the commission of a narcotics offense. Guidelines § 2D1.1(b) provides for a two-level enhancement of the defendant's base offense level "[i]f a dangerous weapon (including a firearm) was possessed during commission of the offense...." At sentencing, the government offered the testimony of Mr. Laskey, a maintenance person at the Hampton Inn Hotel, to prove that Mr. Espinosa-Guerrero possessed a weapon during the offense. Mr. Laskey testified that he and two police officers searched a former guest's room after hearing from the hotel manager that one of the hotel's former guests had been arrested at the airport with drugs. He further stated that the search revealed a small revolver in between the mattresses of the bed. Additionally, the government offered a receipt from the Hampton Inn Hotel bearing Mr. Espinosa-Guerrero's name, room number, and the dates of his stay at the hotel.
 
 
 12
 Mr. Espinosa-Guerrero argues that this evidence was insufficient to prove that he actually possessed a weapon. We agree. The only piece of evidence the government produced which identified the number of the room occupied by Mr. Espinosa-Guerrero was the hotel receipt. This document, standing alone, is insufficient to prove that the recovered weapon belonged to Mr. Espinosa-Guerrero or that the gun was found in the particular room stated on the receipt. Although Mr. Laskey testified that he found a gun in the room of a former guest allegedly arrested for drug possession, on cross-examination, he admitted that he did not know the name of the individual who had occupied the room or even the number of the room in which he found the weapon. In short, there is no evidence linking the recovered weapon to Mr. Espinosa-Guerrero or his former room at the Hampton Inn Hotel. Consequently, we must conclude that the district court erroneously enhanced Mr. Espinosa-Guerrero's sentence for possession of a weapon.
 
 
 13
 For the reasons stated above, the sentence is vacated and the case remanded to district court for resentencing consistent with this opinion.[3]
 
 
 14
 VACATED AND REMANDED.
 
 
 15
 Judge Ripple would affirm the judgment of the district court.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Robert's testimony concerning the four cocaine transactions that took place during 1990-1991 is corroborated by motel receipts and phone records
 
 
 [2]
 The drug transactions during 1990-1991 occurred after Mr. Espinosa-Guerrero's arrest. Following Mr. Espinosa-Guerrero's 1988 arrest, he was transferred to State custody on a State probation hold. Unbeknownst to the United States, prior to the handing down of the Superceding Indictment in this case, the House of Correction released Mr. Espinosa-Guerrero on the probation hold back to New York. His whereabouts remained unknown for approximately three years
 
 
 [3]
 On February 18, 1992, Mr. Espinosa-Guerrero's appointed counsel moved to withdraw as counsel due to his acceptance of a position at the Ozaukee County District Attorney's Office. We grant counsel's motion to withdraw as counsel for the appellant. Given our disposition of this case, we allow the district court to appoint new counsel for Mr. Espinosa-Guerrero on remand