**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Henry L. EWING, Defendant–Appellant.**

No. 92–1158.

United States Court of Appeals,
Seventh Circuit.

Argued May 21, 1992.

Decided Nov. 16, 1992.

Richard H. Lloyd, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Criminal Div., Fairview Heights, Ill., for U.S.

Renee E. Schooley, Federal Public Defender (argued), Office of the Federal Public Defender, East St. Louis, Ill., for Ewing.

Before COFFEY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Henry Lee Ewing was indicted on one count of possessing with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and one count of using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). A jury convicted Ewing on the distribution charge and acquitted him on the firearms charge. After the finding of guilty, the district court, pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines"), sentenced Ewing to 15 months imprisonment. Ewing argues that his conviction should be reversed because the district court did not permit his attorney to testify about some alleged evidence tampering by the Government. Ewing also claims that the district court erred in determining his sentence under the Guidelines. The conviction and sentence are affirmed.

## I.

The facts of this case are not in dispute. On March 22, 1991, officers of the Alton, Illinois police department executed a search warrant at the home of the defendant-appellant Ewing. At about 10:00 p.m. that evening, the police announced their presence and entered Ewing's residence through an unlocked front door. They found Ewing on the living room couch watching television. Next to the television was a police scanner tuned to the Alton Police Department frequency. Ewing was arrested, handcuffed and searched; the police seized a set of keys found in Ewing's front pants pocket.

The officers' attention was immediately drawn to a locked strongbox on Ewing's dining room table, approximately fifteen feet from where Ewing had been sitting. The police opened the box with one of the keys seized from Ewing. Inside the box they discovered two clear plastic bags containing 20 grams of cocaine; one clear plastic bag containing six small packets each holding about one tenth of a gram of cocaine; an unloaded .32 caliber Derringer pistol (which was later determined to be stolen); $438.16 in cash; a small notebook with numerical calculations recording drug trafficking transactions; a sliced-up phone bill which had been used to make the cocaine packets; a checkbook in Ewing and his wife's names; and a wallet with Ewing's Illinois drivers license, issued March 16, 1991. The six packets of cocaine, the firearm, and the phone bill were all laying on top of the wallet. Also in the dining room, the police found one clear plastic bag of marijuana inside a motorcycle helmet. The officers also came upon two composition notebooks containing drug trafficking notations in the landing area near the top of the steps leading down from the dining room to the basement. Some of the pages had been cut out of the notebooks with a very sharp instrument (perhaps a razor or a knife). An Alton police detective testi-

fied that pages such as these are often cut and used to package cocaine.

## II.

Ewing maintains that the district court committed reversible error in not allowing his attorney, Renee E. Schooley, an assistant federal public defender, to testify about allegations that the Government tampered with the evidence used against him. Specifically, Ewing claims that the two composition notebooks found in his dining room did not have his name written on them when they were seized by the police during the search of his house. The two notebooks did have Ewing's name written on them when they were introduced at trial as evidence of his drug trafficking enterprise. Ewing's attorney was prepared to testify that six weeks before trial, when she and a paralegal from her office, Abigail Stottlar, examined the evidence gathered by the Alton police against Ewing and stored at the Alton police station, Ewing's name did not appear on either composition notebook.

Under the Illinois Rules of Professional Conduct, adopted by the United States District Court for the Southern District of Illinois as its own legal ethics code,[1] a lawyer may not be both witness and counsel in the same case, except in exceptional circumstances. Rule 3.7 of the Illinois Rules provides, in pertinent part, that:

"(a) A lawyer shall not accept or continue employment in contemplated or pending litigation if the lawyer knows or reasonably should know that the lawyer may be called as a witness on behalf of the client, except that the lawyer may undertake the employment and may testify:

(1) if the testimony will relate to an uncontested matter;

(2) if the testimony will relate to a matter of formality and the lawyer reasonably believes that no substantial evidence will be offered in opposition to the testimony;

---

**1.** See Rule 33, Disciplinary Rule IV(B) of the United States District Court for the Southern District of Illinois.

(3) if the testimony will relate to the nature and value of legal services rendered in the case by the lawyer or the firm to the client; or

(4) as to any other matter, if refusal to accept or continue the employment would work substantial hardship on the client."

Illinois Rules of Professional Conduct, Ill. Rev.Stat. ch. 110A, Rule 3.7 (1992).

"The advocate-witness rule, which articulates the professional impropriety of assuming the dual role of advocate and witness in a single proceeding, has deep roots in American law." *United States v. Johnston*, 690 F.2d 638, 642 (7th Cir.1982) (en banc). "That counsel should avoid appearing both as advocate and witness except under special circumstances is beyond question." *United States v. Morris*, 714 F.2d 669, 671 (7th Cir.1983).[2]

"The recognized rationales for forbidding counsel to appear as a witness are: ... it eliminates the possibility that the attorney will not be a fully objective witness, ... it reduces the risk that the trier of fact will confuse the roles of advocate and witness and erroneously grant testimonial weight to an attorney's arguments, ... it reflects a broad concern that the administration of justice not only be fair, but also appear fair...."

*Id.* "This rule, however, does not render an advocate incompetent as a witness, but merely *vests the trial court with discretion* to determine whether counsel may appear as a witness without withdrawing from the case." *Id.* (emphasis added). In *Johnston*, we considered whether a district court abused its discretion in refusing to allow a government prosecutor to testify at a pretrial suppression hearing. 690 F.2d at 641–42. We concluded that allowing an advocate to testify "is a situation to be avoided if possible, but ... will be permitted in extraordinary circumstances and for

compelling reasons, usually where the evidence is not otherwise available." *Id.* at 644. *See also United States v. Fogel*, 901 F.2d 23, 26 (4th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 343, 112 L.Ed.2d 308 (1990) ("Courts have generally frowned on" allowing counsel to testify, but when "the testimony is important and no other witness would be able to supply it, then such testimony may be allowed.")

■ Our review of the instant record convinces us that the district court did not abuse its discretion in refusing to allow Ewing's counsel to testify about the alleged evidence tampering. Stottlar, the defense counsel's paralegal, testified before the jury that she and defense counsel examined the evidence against Ewing at the Alton police station on August 30, 1991, six weeks before trial. Stottlar explained that she and defense counsel focused on the composition notebooks in their examination of the evidence because "[w]e were specifically looking to see if they had Henry Ewing's name on them at the time."[3] Defense counsel then asked Stottlar, "[a]nd on August 30, 1991, did they [the composition notebooks] have Henry Ewing's name on them." "No," answered Stottlar. Immediately following the Government's brief cross examination of Stottlar, the district court gave the jury the following instruction:

"Ladies and gentlemen, you have just heard the testimony of Abigail Stottlar regarding her trip to the Alton Police Department for the purpose of viewing physical evidence, some or all of which has been admitted in this case.

"You have heard the testimony also that Renee Schooley, attorney for the defendant herein, accompanied Miss Stottlar and also examined the physical evidence.

---

2. Both *Johnston* and *Morris* discussed the advocate-witness rule in reference to its codification as Rule 5–102 of the Model Code of Professional Responsibility, which was then in force. *Johnston*, 690 F.2d at 642; *Morris*, 714 F.2d at 671. However, the "corresponding rule [3.7] under the [Illinois Rules of Professional Conduct] is essentially unchanged" from its predecessor in the Model Code, *United States v. Spears*, 965

F.2d 262, 275 n. 6 (7th Cir.1992), and therefore our previous discussions of the advocate-witness rule are applicable to the instant case.

3. Defense counsel stated that she and her paralegal were "looking for ... evidence connecting [Ewing] to things found in the [strong] box, or anything else."

"For reasons that are of no concern to you, I have ruled that Renee Schooley cannot testify in this case."

Defense counsel requested this instruction to clear up any confusion the jurors might have had as to why she did not also testify about her examination of the evidence along with her paralegal. Immediately following this instruction, the defendant called a handwriting analyst, William H. Store, who testified that Henry Ewing did not write the words "Henry Ewing" which appeared on the front of the two composition notebooks introduced at trial.

As the district court observed, the defendant was able to place before the jury his evidence supporting the claim that his name was written on the composition notebooks *after* they had been seized by police. Stottlar's testimony provided Ewing's most powerful evidence that tampering had allegedly occurred. Schooley's testimony, although it would have served to corroborate Stottlar's story, would have been, as the district court noted, cumulative. Given the strong presumption against allowing counsel to testify as a witness, and the fact that the defendant was able to present Stottlar's critical eyewitness testimony, it was not an abuse of discretion for the district court to rule that Schooley's testimony would have been cumulative and thus that it would not be allowed.[4]

### III.

Ewing also argues that the district court erred in giving him a two-point sentencing enhancement in his base offense level pursuant to § 2D1.1(b)(1) of the Guidelines. Section 2D1.1(b)(1) instructs that "[i]f a dangerous weapon (including a firearm) was possessed" during a drug offense, "in-crease by 2 levels" the defendant's base offense level. With the two level enhancement, the applicable Guidelines range was 15–21 months. Without the enhancement, the range would have been 10–16 months.

A district court may order a § 2D1.1(b)(1) enhancement for possession of a firearm even if the defendant has been acquitted of the firearms offense. *United States v. Welch*, 945 F.2d 1378, 1384–85 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1235, 117 L.Ed.2d 469 (1992). "Nothing in either the Guidelines or the Constitution prevents a judge from taking account of conduct in which the defendant engaged, whether or not an acquittal prevents the imposition of criminal penalties directly on that conduct." *Id.* at 1385 (quoting *United States v. Fonner*, 920 F.2d 1330, 1332 (7th Cir.1990)). An acquittal "does not mean that the defendant didn't do it; it means that the prosecution failed to establish culpability beyond a reasonable doubt." *Id.* (citation omitted). Under the Guidelines, in contrast, the prosecution need only establish by a preponderance of the evidence that the defendant engaged in the enhancement-triggering conduct. *Id.* "Thus, the district court properly considered whether the defendant's sentence should be enhanced for possession of a firearm even though the jury acquitted him of the offense as charged under § 924(c)." *Id.* See also *United States v. Nunez*, 958 F.2d 196, 199–200 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 168, 121 L.Ed.2d 115 (1992) (upholding a § 2D1.1(b)(1) enhancement even though the Government voluntarily dismissed the two gun counts originally contained in the indictment).

---

**4.** One obvious solution to the problem would have been for Schooley to withdraw as defense counsel and then testify that Ewing's name was not on the composition notebooks when she examined them. The record on appeal contains no indication that defense counsel ever offered to withdraw from representation. In her brief and at oral argument, defense counsel asserted that she was prepared to withdraw from representation and have another attorney from the public defender's office replace her. She also claims that a potential replacement attorney was present in the district court's chambers when the matter was being discussed, and that the district court was aware of her willingness to withdraw. Schooley asserts that she did not make a formal offer to withdraw because the district court indicated that if she took the stand, the entire public defender's office would be disqualified from representing Ewing "which would mean that we would have to recess the trial for I don't know how long to make other arrangements. . . . "

■ We review the district court's factual finding that the defendant possessed a firearm in connection with his drug trafficking offense for clear error only. *Nunez*, 958 F.2d at 198; *Welch*, 945 F.2d at 1385; 18 U.S.C. § 3742(e). The commentary to § 2D1.1(b)(1) states that the "enhancement for weapon possession ... should be applied if the weapon was present, unless it is *clearly improbable* that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in his closet." U.S.S.G. § 2D1.1(b)(1), comment. (n. 3) (emphasis added). The defendant falls far short of meeting the standard that it was clearly improbable that the pistol was connected with his offense. The undisputed evidence is that a .32 caliber pistol was found inside a locked strongbox on Ewing's dining room table; the key to the box was found in Ewing's pants pocket when he was arrested. Although the gun was unloaded when it was seized by the police, the situation here is not analogous to an unloaded hunting rifle found in a closet far removed from any other incriminating evidence. In the box along with the gun the police found Ewing's wallet (containing his drivers license issued six days before), his checkbook, a stash of cocaine, and notebooks containing numerical calculations recording drug transactions. The cocaine and the gun were found on top of the wallet. The presence of the wallet with the recently-issued license and the checkbook support the inference that Ewing used the box to store personal possessions he frequently used. The proximity of the cocaine and the gun demonstrate that Ewing had the firearm handy when he was conducting his drug transactions. The seizure of a firearm in close proximity to illegal drugs is considered powerful support for the inference that the firearm was used in connection with the drug trafficking operation. *Nunez*, 958 F.2d at 200; *United States v. Franklin*, 896 F.2d 1063, 1065–66 (7th Cir. 1990). The fact that Ewing's wallet was found under the cocaine and the gun indi-

cate that he routinely handled all three. Thus, the physical evidence overwhelmingly supports the district court's conclusion that Ewing possessed the gun in connection with his drug trafficking.

Ewing's challenge to the firearms sentencing enhancement relies heavily on the trial testimony of Tanya Smith. Smith testified that she was the former girlfriend of Ewing's brother-in-law, Michael Taylor, that Taylor lived in Ewing's home, and that the gun found in the strongbox was taken from her[5] by Taylor a few weeks before Ewing's arrest. Smith claimed that Taylor kept the gun in the strongbox on Ewing's dining room table. Taylor did not have a key to the box, but Smith insisted that Taylor was able to unlock it with a screwdriver. The district court was of course aware of Smith's testimony when it sentenced Ewing. The district court's § 2D1.1(b)(1) finding demonstrates that it did not find Smith's testimony convincing. Credibility determinations in the sentencing context will not be overturned on appeal unless they are without support in the record. *United States v. Beal*, 960 F.2d 629, 634 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 230, 121 L.Ed.2d 166 (1992). Given the overwhelming physical evidence tying Ewing to the firearm, we will not second-guess the district court's ruling that the evidence in the strongbox connecting Ewing and his drug operation to the pistol was more persuasive than Smith's testimony that the pistol was not Ewing's.

Ewing also argues that it is unlikely that he would have gone to the "effort of procuring the gun" to protect what he considers a "very small amount" of cocaine—20 grams. Section 2D1.1(b)(1) directs district courts to order a two-point increase in the defendant's base offense level if a dangerous weapon was possessed in connection with a drug trafficking offense. Ewing points to no authority for the proposition that the quantity of cocaine found in a defendant's possession is relevant to the determination of whether that defendant used a firearm in a connection with his

5. Smith testified that the gun had been loaned to her by a friend.

drug trafficking offense. "The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1(b)(1), comment. (n. 3). That increased danger exists whether the gun-toting drug dealer is found possessing 20 grams or 200 kilograms of cocaine.

### IV.

For the foregoing reasons, defendant-appellant Ewing's conviction and sentence are AFFIRMED.