998 F.2d 1016
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Jimmy LEWIS, Defendant/Appellant.
 No. 92-3565.
 United States Court of Appeals, Seventh Circuit.
 Argued June 16, 1993.
Decided July 14, 1993.
 
 Before EASTERBROOK, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted Jimmy Lewis of distributing cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1), and carrying a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c). The district court, pursuant to the Sentencing Guidelines, sentenced Lewis to a total of ninety-seven months in prison. Lewis appeals his sentence, claiming that the court erred in calculating the quantity of cocaine attributable to him and in refusing to grant a two-level reduction for acceptance of responsibility. For the reasons that follow, we affirm Lewis's sentence.
 
 I. Background
 
 2
 On December 9, 1991, at around 6:00 p.m., Brian Latham, a special agent of the Illinois State Police, and a confidential source named Jerry Covington went to a residence in Springfield, Illinois intending to purchase crack cocaine from one Marvin Jackson. Jackson said that he didn't have any cocaine to sell, but another man, who was wearing a dark-colored UCLA Bruins jacket, knew where to find some. This man was Jimmy Lewis. Lewis and the two undercover agents traveled by car to a nearby residence in Springfield, and the agents gave Lewis $100. Lewis noted that the money was safe with him, because he was carrying a gun for protection. While the agents waited in the car, Lewis went into the residence. He returned five minutes later with a substance that was subsequently determined to be 0.7 grams of crack cocaine.
 
 
 3
 Later that evening, at around 8:45 p.m., Agent Latham returned to Jackson's residence seeking to purchase more crack cocaine from either Lewis or Jackson. This time Jackson obliged, and left the residence to fetch the cocaine. Lewis, who stayed behind, withdrew from his pocket what appeared to be one-eighth of an ounce of crack cocaine and offered to sell it to Agent Latham. When Agent Latham didn't bite, Lewis asked him if he wanted to purchase a gun and two magazine clips instead, and withdrew from the pocket of the UCLA Bruins jacket that he was wearing a .25 caliber automatic gun. This was the same gun that Lewis had carried during the drug transaction earlier that day. Agent Latham declined the offer, stating that he did not have enough money to buy the gun. Jackson subsequently returned with the crack cocaine. Latham left, and obtained a search warrant for Jackson's residence.
 
 
 4
 The search warrant was executed at 1:00 the next morning (December 10). When the agents entered the residence Lewis was standing between the bedroom and the bathroom. On the floor of the bedroom, approximately fifteen to twenty feet from where Lewis was standing, was a loaded .25 caliber automatic pistol and a UCLA Bruins jacket. In the left pocket of the jacket was a prescription medicine bottle containing a substance that was subsequently determined to be 1.2 grams of crack cocaine.
 
 
 5
 Lewis was charged by indictment with distributing 0.7 grams of crack cocaine on December 9, possessing with intent to distribute the 1.2 grams of crack cocaine that were found during the December 10 search, carrying a firearm in relation to the distribution of the 0.7 grams, and carrying a firearm in relation to the possession and intended distribution of the 1.2 grams. In July of 1992 a jury convicted Lewis of the charges concerning the 0.7 grams but acquitted him of the charges concerning the 1.2 grams.
 
 
 6
 Lewis was sentenced in October of 1992. The district court found that for sentencing purposes Lewis was accountable for 1.9 grams of crack cocaine, which translates to a base offense score of 18 under the Sentencing Guidelines. This base offense score, combined with a criminal history category of III, produced a permissible sentencing range of 33 to 41 months for count one. Had the court not held Lewis accountable for the 1.2 grams of cocaine that were discovered during the search of Jackson's residence, Lewis's base offense score would have been set at 16 and, combined with a criminal history category of III, would have produced a sentencing range of 27 to 33 months. The court imposed a sentence of 37 months' imprisonment on count one. Count four carried a mandatory, consecutive term of 60 months' imprisonment.
 
 II. Discussion
 
 7
 On appeal, Lewis resurrects two claims that he initially raised in the district court as objections to the presentence report: first, that he should not be held accountable for the 1.2 grams of crack cocaine that were found in the pocket of the UCLA Bruins jacket during the search of Jackson's residence; and second, that he is entitled to a two-point reduction in his base offense score for accepting responsibility. These claims are discussed in turn.
 
 
 8
 Sentencing Guideline § 1B1.3(a)(2), entitled "Relevant Conduct (Factors that Determine the Guideline Range)," provides that, for the purpose of calculating a base offense score for a narcotics conviction, the district court should consider "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction."[1] The Commentary to Guideline § 1B1.3(a)(2) explains that, "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." The district court in this case found that: 1) although Lewis was acquitted of possessing the 1.2 grams of crack cocaine that were discovered during the search of Jackson's residence, for the purpose of sentencing, Lewis possessed the 1.2 grams; and 2) Lewis's possession of the 1.2 grams was related to his distribution of the 0.7 grams (the count of conviction) and therefore would be taken into account in the calculation of Lewis's base offense score.
 
 
 9
 Lewis contests both parts of the district court's analysis. First, he submits that the evidence considered by the sentencing court is insufficient to link him to the 1.2 grams of crack cocaine. This argument lacks merit. The standard of proof at sentencing is not beyond a reasonable doubt, but rather a preponderance of the evidence, United States v. Fonner, 920 F.2d 1330, 1333 (7th Cir.1990), and the government presented sufficient evidence to meet this standard. The cocaine was discovered in the pocket of a dark-colored UCLA Bruins jacket, which was lying on the bedroom floor in close proximity to where Lewis was standing. The jacket was identical to the one that Lewis was wearing only hours earlier when he purchased the 0.7 grams of cocaine for Covington and Latham, and later that evening (only four hours before the search was conducted) when Latham returned to Jackson's residence to purchase cocaine from Jackson. Moreover, the .25 caliber handgun that Lewis had withdrawn from the pocket of the jacket and had offered to sell Latham was similar to the loaded handgun that was found on the floor, near the jacket. There is no direct evidence linking Lewis to the cocaine (if such evidence existed, Lewis likely would have been convicted of possessing the cocaine). But circumstantial evidence is every bit as probative as direct evidence. United States v. McNeill, 887 F.2d 448, 450 (3d Cir.1989), cert. denied, 493 U.S. 1987 (1990). And while the circumstantial evidence in this case was insufficient for the jury to conclude beyond a reasonable doubt that Lewis possessed the 1.2 grams of crack cocaine, it is sufficient to establish Lewis's connection to the UCLA Bruins jacket, and the cocaine found in it, by a preponderance of the evidence.
 
 
 10
 Lewis also disputes the district court's determination that possessing the 1.2 grams and distributing the 0.7 grams constituted the "same course of conduct" within the meaning of Guidelines § 1B1.3(a)(2).[2] This is a factual finding, United States v. Nunez, 958 F.2d 196, 198 (7th Cir.), cert. denied, 113 S.Ct. 168 (1992), and should not be disturbed unless it is clearly erroneous. 18 U.S.C. § 3742(e). The court's finding is not clearly erroneous.
 
 
 11
 For certain behavior to be considered part of the same course of conduct as the offense of conviction for purposes of Guideline § 1B1.3(a)(2), there must be a sufficient logical relationship and temporal proximity between the behavior and the offense of conviction to constitute a pattern of criminal conduct. See United States v. Caicedo, 937 F.2d 1227, 1236 (7th Cir.1991); United States v. White, 888 F.2d 490, 500 (7th Cir.1989); United States v. Hahn, 960 F.2d 903, 910 (9th Cir.1992); William W. Wilkens, Jr. & John R. Steer, Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines, 41 S.C.L.Rev., 495, 515-16 (1990). The temporal proximity of Lewis's sale of the 0.7 grams and his possession of the 1.2 grams weighs in favor of a finding that the offenses were part of a single course of conduct. Lewis sold the 0.7 grams to the undercover agents at around 6:00 p.m., and the 1.2 grams were discovered in Lewis's possession only seven hours later.
 
 
 12
 Moreover, there is a logical relationship between Lewis's possession of the 1.2 grams of cocaine and his distribution of the 0.7 grams. The handgun that was found near the 1.2 grams was similar to the one that Lewis carried for protection when he sold the 0.7 grams. During the search of Jackson's residence, Lewis was found near the handgun and the 1.2 grams. And the 1.2 grams were concealed in the pocket of a jacket that Lewis wore when he sold the 0.7 grams. Finally, Lewis negotiated the sale of the 0.7 grams at Jackson's residence, and the 1.2 grams were found in his possession at that same location. This suggests a pattern of possessing and selling cocaine out of Jackson's residence. We believe that, in light of this logical relationship and the strong temporal relationship between Lewis's sale of the 0.7 grams and his possession of the 1.2 grams, the district court's conclusion that the two offenses were part of the same course of conduct is not clearly erroneous.
 
 
 13
 The second claim that Lewis raises is that the district court erred in refusing to grant him a two-point reduction in his offense level for accepting responsibility. Guideline § 3E1.1(a) provides that a defendant who "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct" is entitled to such a reduction. Before trial, Lewis offered to plead guilty to distributing the 0.7 grams of cocaine and using a firearm in relation to that offense, but not to the remaining two charges of possessing with intent to distribute the 1.2 grams and using a firearm in relation to that offense. The government refused to accept this offer. Lewis argues that in offering to plead guilty he accepted personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a). The district court refused to grant the two-point reduction because Lewis "put the United States to its burden of proof at trial and continues to deny the factual elements of guilt in this matter, namely, that he distributed cocaine to a law enforcement agent and that he carried a weapon in relation to the drug transaction."
 
 
 14
 This court gives great deference to a district judge's decision regarding a defendant's acceptance of responsibility under Guideline § 3E1.1(a) because " '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.' " United States v. Franklin, 902 F.2d 501, 505 (7th Cir.), cert. denied, 498 U.S. 906 (1990) (quoting United States Sentencing Comm'n, Guidelines Manual, § 3E1.1 Application Note 5). This court therefore should reverse a district court's determination of this issue only if it is clearly erroneous. United States v. Herrera, 878 F.2d 997, 1000 (7th Cir.1989). The district court's determination that Lewis did not accept responsibility for his criminal conduct is not clearly erroneous.
 
 
 15
 By offering to plead guilty to the charge of distributing the 0.7 grams of crack cocaine and carrying a firearm in relation to that offense, Lewis did not necessarily accept responsibility for his conduct for purposes of the Sentencing Guidelines. The act of accepting responsibility for purposes of the Guidelines entails more than does a plea of guilty. A defendant may plead guilty for reasons unrelated to his willingness to accept responsibility for his conduct. That is evident in this case. Lewis was willing to plead guilty to the charges relating to the 0.7 grams of cocaine, but only if the government agreed not to try him on the charges relating to the 1.2 grams. His primary (or possibly sole) motivation for making this offer might not have been a desire to accept responsibility for distributing the 0.7 grams while carrying a firearm, but rather a desire to avoid the risk of being convicted on each of the four charges against him.[3]
 
 
 16
 By contrast, a defendant who accepts responsibility within the meaning of Guideline § 3E1.1(a) must clearly demonstrate to the sentencing court that he accepts personal responsibility for his criminal conduct. In other words, a defendant 'accepts responsibility' only when he fesses up to his actual offense." United States v. Escobar-Majia, 915 F.2d 1152, 1153 (7th Cir.1990). This, Lewis did not do. Lewis's actual offense was to obtain and physically hand the crack cocaine to the undercover agents while he was carrying a weapon. He was convicted of this offense largely on the basis of the testimony of the two undercover agents who observed Lewis obtain the cocaine, handle it, and who heard Lewis tell them that he was carrying a gun. Yet in his objections to the presentence report Lewis stated that he did not physically handle the cocaine or provide the agents with cocaine, or transfer the cocaine to them, but only that he facilitated the purchase. He also denied telling the agents that he was carrying a gun. Thus, even after his conviction, Lewis refused to accept responsibility for the factual elements of his guilt. Rather, he attempted to depict himself as a broker who brought willing buyers and sellers together, but who played no part in the actual sale of crack cocaine.
 
 
 17
 Lewis bears the burden of showing that he is entitled to the reduction, United States v. Camargo, 908 F.2d 179, 185 (7th Cir.1990). His offer to plead guilty to two of the charges against him is insufficient to demonstrate that he recognized and affirmatively accepted personal responsibility for distributing the cocaine while carrying a weapon. Moreover, Lewis's continued assertions that he did not engage in the actual conduct that led to his conviction suggest that he did not accept, but rather contested, responsibility for his criminal conduct. Therefore, the district court correctly concluded that Lewis did not accept responsibility for purposes of Guideline § 3E1.1(a).
 
 III. Conclusion
 
 18
 For the foregoing reasons, Lewis's sentence is AFFIRMED.
 
 
 
 [1]
 The applicable guidelines are those that were in effect on October 19, 1992, the date on which Lewis was sentenced. See 18 U.S.C. § 3553(a)(4)
 
 
 [2]
 Actually, the court cited Guidelines § 1B1.3(a)(1) as the applicable provision, and explained that § 1B1.3(a)(1) "allows consideration of acts committed by a defendant that are related to the offense." This, of course, is incorrect: § 1B1.3(a)(1) does not deal with "related conduct"; rather, it instructs sentencing courts to consider a defendant's acts taken in furtherance of the offense of conviction. Nevertheless, the government argues on appeal, and Lewis does not dispute, that the court intended to apply Guidelines § 1B1.3(a)(2) and its citation to § 1B1.1(a)(1) was an inadvertent oversight. Certainly this appears to be the case. The court referred to Lewis's possession of the 1.2 grams as "conduct relevant to the distribution offense for which Defendant was convicted." This language is synonymous with the "part of the same course of conduct or common scheme or plan as the offense of conviction" language of § 1B1.3(a)(2). Cf. United States v. Vopravil, 891 F.2d 155, 158 (7th Cir.1989) (district court's finding that conduct was "clearly related" to the offense of conviction synonymous with language of § 1B1.3(a)(2))
 
 
 [3]
 Indeed, had Lewis been convicted of using a firearm in relation to possessing the 1.2 grams of crack cocaine, he would have received an additional twenty years in prison. See 18 U.S.C. § 924(c)(1)