42 F.3d 1392
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael RATLIFF, Defendant-Appellant.
 No. 94-1275.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 6, 1994.
Decided Dec. 7, 1994.
 
 Before COFFEY, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Michael Ratliff pleaded guilty to the distribution of cocaine in exchange for the dismissal of related conspiracy and possession charges. At Ratliff's sentencing, however, the court considered drugs related to the conspiracy count for the purpose of calculating his sentence. Ratliff argues that the court erred by including these drugs, because his activities as a coconspirator are not relevant conduct within the meaning of the Sentencing Guidelines. We affirm the district court.
 
 I. Facts
 
 2
 On June 10, 1994 a grand jury in Springfield, Illinois returned a four-count indictment against Michael Ratliff. The indictment charged Ratliff as follows: conspiring with others, including Kent Wallace, to distribute controlled substances from about January 1992 through at least May 1992 (Count I), attempted possession of cocaine with intent to distribute on April 28, 1992 (Count II), distribution of cocaine on May 21, 1992 (Count III), and distribution of cocaine on May 28, 1992 (Count IV).[1] Ratliff pleaded guilty to Counts III and IV, the government dismissed counts I and II, and a date was set for sentencing.
 
 
 3
 A presentence report was prepared by a U.S. Probation Officer. That report contained evidence that Ratliff had periodically sold drugs to undercover agents or cooperating individuals from June 19, 1991 to May 26 1992.[2] All of these sales took place in Springfield, Illinois. It also contained a statement given by Kent Wallace, one of Ratliff's coconspirators, describing Ratliff's role in a conspiracy to distribute cocaine and cocaine base. Specifically, Wallace said that he had fronted crack cocaine to Ratliff and others in $500.00 or $1,000.00 portions, and that he had supplied Ratliff with about 1 1/2 kilograms of cocaine between late 1991 and early 1992. Wallace also said that Ratliff had been his accomplice during a drug buy that took place at the Best Western Inn in Springfield, Illinois on April 28, 1992. That drug buy was actually a reverse sting operation conducted by the Drug Enforcement Agency (DEA) which culminated in the arrest of Wallace and others. After Wallace was taken into custody, he told police that Ratliff was at the scene to provide security.
 
 
 4
 In fact, DEA agents had stopped Ratliff when they noticed that he was driving around the parking lot during their operation, but had released him after questioning. When the agents first ordered Ratliff to stop he sped away to another part of the parking lot even though they were dressed in DEA raid uniforms and had their red lights activated. Unfortunately for Ratliff, he fled to a part of the parking lot with no outlet and was forced to return to the area where the DEA agents were wrapping up their sting operation. This time Ratliff stopped and, upon request, gave the agents permission to search his car. The agents found a scanner that was set to scan two channels used by the Springfield Police Department. A scanner found in Wallace's car had also been set to scan those same two channels. Wallace had purchased both scanners. According to the presentence report, Ratliff later told a cooperating individual that he and Kent Wallace had tried to purchase a kilo of cocaine, but the police had shown up and blown the deal. The presentence report recommended that Ratliff's activities with Wallace be considered for sentencing purposes.
 
 
 5
 Ratliff denied Wallace's statements at his sentencing hearing, although he presented no evidence to support his bare denials. Ratliff asserted that he was at the Best Western to rent a room, not to serve as security on April 28, 1992.[3] Ratliff also denied that Wallace had sold him 1 1/2 kilograms of cocaine. Significantly, Ratliff did not deny buying drugs from Wallace; he merely argued that Wallace had sold him only 7 or 8 ounces of cocaine during the "relevant time period." This dispute was settled when Ratliff stipulated--on no less than four occasions--that he had received 7 to 8 ounces of crack cocaine from Wallace and had later distributed those drugs.
 
 
 6
 The district court found that Ratliff's actions in furtherance of his conspiracy to distribute cocaine were relevant conduct and included drugs related to those activities when calculating his sentence. Specifically, the court included the 8 ounces of cocaine that Ratliff admitted receiving from Wallace and distributing thereafter as well as the kilogram of cocaine that Ratliff and his coconspirators tried to purchase on April 28, 1992. Ratliff now argues that the small-scale drug distribution counts to which he pleaded guilty "stand in sharp contrast" to the allegedly larger amounts of drugs he received as Wallace's coconspirator and his service as a lookout during the April 28, 1992 drug purchase. Thus, the argument goes, his actions in furtherance of his conspiracy to distribute cocaine are not relevant conduct, and therefore, the district court erred when it considered drugs attributed to these activities for the purpose of calculating his sentence.
 
 II. Analysis
 
 7
 In order for uncharged conduct to be considered for sentencing purposes that conduct must be part of the same "course of conduct, common scheme or plan as the offense of conviction." United States Sentencing Guidelines (USSG) Sec. 1B1.3(a)(2). In this case Ratliff's guilty plea on the distribution counts constitutes the offense of conviction. Therefore, we must determine whether Ratliff's actions in furtherance of his conspiracy with Wallace and others to distribute cocaine were "part of the same course of conduct or common scheme or plan" that gave rise to his conviction for the distribution of crack cocaine. Id.
 
 
 8
 The relevant conduct provision of the Guidelines authorizes courts to consider a pattern of misconduct that cannot readily or meaningfully be broken into discrete, identifiable units when sentencing a defendant. United States v. Sykes, 7 F.3d 1331, 1335 (7th Cir.1993) (citations omitted). In order for conduct to be considered relevant, however, there must be a pattern; conduct does not become relevant merely because it is similar. Id. at 1336. Thus, "a court must consider whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind." Id. Our inquiry focuses on the similarity, regularity, and temporal proximity of the uncharged acts to the offense of conviction. Id. Relevant considerations include whether similar parties were involved in each transaction, the geographical relationship, and any other relationship between the offense of conviction and the relevant conduct. United States v. Wilson, 31 F.3d 510, 516 (7th Cir.1994).
 
 
 9
 We affirm the district court's sentencing decision if it correctly applied the Guidelines to findings of fact that were not clearly erroneous. United States v. Montgomery, 14 F.3d 1189, 1196 (7th Cir.1994). The district court's determination that uncharged conduct constitutes relevant conduct is a finding of fact. United States v. Nunez, 958 F.2d 196, 198 (7th Cir.1992); Sykes, 7 F.3d at 1335. A factual finding is clearly erroneous if it leaves a reviewing court with a definite and firm conviction that a mistake has been committed. United States v. Rivera, 6 F.3d 431, 444 (7th Cir.1993). In this case, Ratliff's challenge to the trial court's factual determination is a mere denial, and therefore, he must show that the government's charge is naked or unsupported. Rivera, 6 F.3d at 445. Ratliff made no such showing.
 
 
 10
 The district court found that Ratliff's actions evidenced a pattern of regular drug distribution. The record shows that Ratliff periodically sold cocaine to government agents or cooperating individuals from June 1991 through May 1992. Wallace stated that Ratliff had sold cocaine for him from 1991 through 1992, and the government showed that Ratliff was cooperating with Wallace, one of his coconspirators, at least as late as April 28, 1992. Ratliff admitted that he sold 7 to 8 ounces of cocaine which he had received from Wallace and his attorney conceded that this activity took place during the relevant time period. The district court's finding of regularity is supported by the evidence; it is not clearly erroneous.
 
 
 11
 Ratliff's argument that these activities were not regular is incredible. Apparently he thinks that the government must prove that he sells drugs with clock-like precision in order to establish the requisite degree of regularity. Quite the contrary, the government's evidence allowed the district court to infer that Ratliff was selling drugs regularly throughout 1991 and 1992. See United States v. Cedano-Rojas, 999 F.2d 1175, 1180-81 (7th Cir.1993) (evidence sufficient to support district court's finding that defendant continued to deal drugs throughout two-year period); United States v. Montgomery, 14 F.3d 1189, 1198 (7th Cir.1994) (same); United States v. Nunez, 958 F.2d 196, 198-99 (7th Cir.1992) (same). Ratliff's failure to introduce evidence rebutting this inference further supports the district court's finding. See Rivera, 6 F.3d at 445; United States v. Crawford, 99[1] F.2d 1328, 1331 (7th Cir.1993).
 
 
 12
 The district court also found that Ratliff's actions in furtherance of his conspiracy to distribute cocaine were similar to the street-level sales to which Ratliff pleaded guilty. The record shows that Ratliff's sales to government agents or cooperating individuals were street sales involving relatively small quantities of drugs. Wallace said that Ratliff had sold cocaine for him in 1991 and 1992, and Ratliff admitted selling 7 or 8 ounces of cocaine which he obtained from Wallace. All the sales took place in Springfield, Illinois. This evidence allowed the district court to infer that Ratliff was engaged in street-level sales of small quantities throughout this period. The district court's finding of similarity is supported by the evidence; it is not clearly erroneous.
 
 
 13
 Ratliff's effort to examine separately his different roles as a conspirator (e.g. "lookout" and "distributor") is also incredible. Such an approach defies common sense and the language of Section 1B1.3 which requires that we consider "all acts and omissions ... that were part of the same course of conduct or common scheme or plan." USSG Sec. 1B1.3(a)(2); See also Rivera, 6 F.3d at 445 (evidence supported district court's finding that drug deliveries were part of the same course of conduct despite contention that drugs were delivered in furtherance of a different conspiracy). At any rate, such an analysis would not benefit Ratliff because relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." See USSG Sec. 1B1.3(a)(1)(B). See also Crawford, 991 F.2d at 1330-31 (it is not necessary that defendant be convicted of conspiracy to be held accountable for drugs negotiated, bought or sold by other persons.); Rivera, 6 F.3d at 445 (accord).
 
 
 14
 Finally, the district court found that there was sufficient "temporal proximity" between Ratliff's activities as a coconspirator and the offenses of conviction, because all these activities fell between June of 1991 and May 1992. See Sykes, 7 F.3d at 1336. These acts evince sufficient temporal proximity to be considered for sentencing purposes. See Cedano-Rojas, 999 F.2d at 1180-81 (drug transactions two years prior to offense of conviction still relevant conduct); Nunez, 958 F.2d at 198-99 (same). The district court's finding of temporal proximity is supported by the evidence; it is not clearly erroneous.[4]
 
 
 15
 Ultimately, Ratliff's argument rests on his contention that the distribution of drugs for a conspiracy is different from the small-scale "entrepreneurial" drug sales that led to his conviction. We reject Ratliff's argument for two reasons. First, the district court's findings are supported by the evidence, and indeed, there is no evidence in the record that Ratliff's activities were "isolated, unrelated events that happen only to be similar in kind." Sykes, 7 F.3d at 1336; Rivera, 6 F.3d at 445. Second, Ratliff's argument rests on the very "charge offense" theory that Section 1B1.3 is designed to modify in favor of "real offense" sentencing. See United States v. White, 888 F.2d 490, 496-97 (7th Cir.1989).
 
 For the foregoing reasons, we
 
 16
 AFFIRM.
 
 
 
 [1]
 Each count alleged a violation of 21 U.S.C. Sec. 841 and Sec. 846, and 18 U.S.C. Sec. 2
 
 
 [2]
 The report stated that Ratliff sold drugs to government agents or cooperating individuals on June 6, 1991, July 7, 1991, November 10, 1991, April 18, 1992, May 21, 1992, and May 26, 1992
 
 
 [3]
 Given the government's overwhelming evidence of his participation in this drug transaction, even Ratliff admitted that this was not a serious dispute. See Transcript from Sentencing Proceedings, January 25, 1994, pp. 11-12
 
 
 [4]
 This showing of "similarity, regularity, and temporal proximity," U.S. v. Montgomery, 14 F.3d at 1198, distinguishes Ratliff's case from those he mistakenly relies upon. For example, only one month elapsed between Ratliff's participation as a coconspirator in the April 28, 1992 drug purchase and his offense of conviction, whereas in both White and Beler there was a two-year lapse between the offense of conviction and the conspiracy that accounted for drugs which the court had considered for sentencing purposes. United States v. White, 888 F.2d 490, 500 (7th Cir.1989); United States v. Beler, 20 F.3d 1428, 1437 (7th Cir.1994). This proximity in time as well as similarity in kind (street-level distribution of small quantities) and location (Springfield, Illinois) also distinguishes Ratliff's case from Duarte where there was no evidence that drugs included for sentencing purposes had been sold in the same geographic area, or that those sales were close in time. United States v. Duarte, 950 F.2d 1255, 1264-65 (7th Cir.1991)