**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael Paul De ANGELO, Defendant–Appellant.**

No. 98–2952.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 16, 1998.

Decided Feb. 8, 1999.

Peggy A. Lautenschlager, Rita M. Rumbe-low (argued), Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

David R. Karpe (argued), Madison, WI, for Defendant–Appellant.

Before ESCHBACH, COFFEY, and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Michael Paul De Angelo pleaded guilty to one count of mail fraud, 18 U.S.C. § 1341, and was sentenced to 46 months' imprisonment. On appeal, De Angelo argues that because there was no showing that he engaged in an amount of planning that was unusual for this type of offense, the district court erred in increasing his offense level by two for "more than minimal planning" under U.S.S.G. § 2F1.1(b)(2)(A). De Angelo also argues that the district court erred when it upwardly departed and increased his offense level by two after concluding that De Angelo's criminal history category did not reflect the seriousness of his past criminal conduct. We affirm.

In April of 1994, De Angelo formally changed his name via the Florida courts to Dallas Christian Holms. Shortly thereafter, De Angelo, using the name Dallas Holms with a false date of birth and social security number, began work at a pizza restaurant in Wisconsin. Two weeks into the job, De Angelo filed a personal injury claim under the name Holms with Cincinnati Insurance Company (Cincinnati) alleging that he had injured his knee when he slipped and fell at the pizza restaurant.

The following week, an insurance agent interviewed De Angelo regarding his claim. During the interview, De Angelo never informed the agent of his former identity; gave false information concerning his birthdate; and used his deceased son's social security number. Additionally, De Angelo denied any prior injuries. In fact, De Angelo had previously filed two separate workers' compensation claims in Florida for work-related knee injuries. Unaware of De Angelo's

prior history of work-related personal injury claims, Cincinnati authorized the issuance of partial disability benefits.

Over the next three years, De Angelo moved from Wisconsin to Idaho, and then from Idaho to Florida. With each move, De Angelo requested and received the insurance checks at each new location.[1] In addition, during the three year period, De Angelo failed to keep several appointments for independent medical examinations. Because of these missed appointments, Cincinnati threatened to suspend his disability payments. In response, De Angelo sent letters to Cincinnati demanding that the payments not be suspended and complaining of the harassment he was receiving. De Angelo's scheme ended when Cincinnati's investigators discovered his former identity and that he had been collecting workers' compensation benefits. De Angelo, under the name Dallas Holms, had received $97,147.27 in benefits from Cincinnati.

■■■ This court reviews a district court's finding of "more than minimal planning" for clear error, and should reverse it only if left with a definite and firm conviction that a mistake has been committed. *See United States v. Moore*, 991 F.2d 409, 412 (7th Cir. 1993). With regard to the district court's decision to depart upward, this court normally reviews the decision for abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 96–97, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Owens*, 145 F.3d 923, 928 (7th Cir.1998). Since the defendant failed to make a proper objection to the departure, however, this court's review is limited to plain error. *See United States v. Marvin*, 135 F.3d 1129, 1135 (7th Cir.1998).

## I. More than Minimal Planning

■■■ On appeal, De Angelo argues that because he engaged in no more planning than would be expected for a typical fraud of this sort, the district court committed clear error when it adjusted his offense level by two for more than minimal planning. The

---

1. From May 19, 1994 through June 25, 1997, De Angelo received $28,885.23 for partial temporary

disability, and $68,289.04 was paid to doctors, pharmacies, and physical therapists.

Guidelines provide three alternative ways in which minimal planning can be shown: "(1) more planning than is typical for commission of the offense in a simple form, (2) significant affirmative steps taken to conceal the offense, or (3) repeated acts over a period of time, unless it is clear that each instance was purely opportune." *United States v. Green*, 114 F.3d 613, 618 (7th Cir.1997) (citing U.S.S.G. § 1B1.1, comment. 1(f)). Enhancement is proper if any one of these three factors is present. *See id.* The district court found that De Angelo engaged in "calculated and repeated acts over a period of time that were not purely opportune." The record supports such a finding.

De Angelo was less than truthful with the insurance company regarding his identity and past medical history. After he began receiving the fraudulently induced payments, he continued to advise the insurance company where to send the checks. Additionally, when Cincinnati requested that he submit to regular medical examinations, De Angelo sent letters complaining that the company was harassing him. This conduct went on for three years. Based upon De Angelo's past history and his conduct in this instance, we are of the opinion that the district court did not commit clear error in determining that De Angelo was guilty of more than minimal planning. *See United States v. Monaco*, 23 F.3d 793, 797 (3d Cir.1994) (noting the repetitive nature of the defendant's actions and that, "[i]nstead of ending the fraud, [the defendant] continued it").

## II. Criminal History

■■■■ Initially, De Angelo argues that he received insufficient notice of the district court's decision to depart upward two offense levels. There is no doubt that De Angelo is entitled to reasonable notice of the grounds for a potential upward departure before sentencing. *See Burns v. United States*, 501 U.S. 129, 138, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). The PSR noted that departure may be warranted under U.S.S.G. § 4A1.3. When the PSR specifically mentions that departure may be warranted under a specific

guideline, the notice is adequate. *See United States v. Ewing*, 129 F.3d 430, 436–37 (7th Cir.1997).

■■■ De Angelo also argues that the district court erred in departing upward two offense levels because, he says, his criminal history score in fact adequately reflected his past criminal conduct. The district court noted three reasons for its two-level departure: (1) De Angelo's criminal history score did not adequately reflect the seriousness of his past criminal conduct; (2) De Angelo's criminal history score did not reflect the seriousness of pending state charges; and (3) De Angelo's sentence could not be imposed to run consecutively to the sentence still to be imposed for his violations of state probation as would be appropriate under § 5G1.3.

The sentencing guidelines allow a district court to depart upward if there is reliable information indicating that the defendant's criminal history score does not adequately reflect the seriousness of his past criminal conduct. *See* U.S.S.G. § 4A1.3, p.s. Such information may include prior sentences "not used in computing the criminal history category," *see* U.S.S.G. § 4A1.3(a), and whether the defendant was awaiting trial or sentencing on another charge at the time of the instant offense, *see* U.S.S.G. § 4A1.3(d).

The PSR sets out in detail the underlying facts of De Angelo's criminal history that failed to factor in his criminal history score. First, De Angelo made several phone calls to his estranged family, in which he threatened to sexually assault and kill family members. As a result of these threats, Wisconsin authorities brought criminal charges for unlawful use of a telephone and brought a motion to revoke De Angelo's probation on his earlier state conviction for reckless endangerment. Second, De Angelo had an unscored 1993 conviction for passing a bad check. Third, the PSR noted that Idaho had issued a criminal complaint based on De Angelo's failure to appear and violation of an order of protection. Finally, Florida had issued three misdemeanor warrants against De Angelo for passing bad checks.[2] De Angelo never ob-

---

2. The Middle District of Florida advised the U.S. Probation Officer that De Angelo had three mis-

demeanor warrants in Pinellas County, Florida for obtaining property in return for worthless

jected to the PSR's description of his criminal history, never objected after the district court stated its findings and departed upward two levels, and does not contest any of these facts on appeal. The district court did not commit plain error in departing two levels. *See United States v. Brown*, 999 F.2d 1150, 1152 (7th Cir.1993) (per curiam).

De Angelo's final argument that the district court did not adequately explain the reasons for its departure is meritless. *See id.* (stating that the district court need not recite all of a defendant's criminal history as long as the court refers to the PSR and the PSR contains all the necessary information).

For the foregoing reasons, De Angelo's sentence is

AFFIRMED.

checks. In each of these cases, De Angelo submitted a check to a business which was drawn on a closed account. A cash bond of $100 applies to each of the three counts.