UNITED STATES of America,
Plaintiff–Appellee,

v.

Arthur J. TURCHEN, also known as Arturo and R2RO, Defendant–Appellant.

No. 98–2718.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 9, 1999.

Decided Aug. 11, 1999.

736

Timothy M. O'Shea (argued), Peggy A. Lautenschlager, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Ronald G. Benavides (argued), Madison, WI, for Defendant–Appellant.

Before CUDAHY, RIPPLE and DIANE P. WOOD, Circuit Judges.

RIPPLE, Circuit Judge.

Arthur Turchen pleaded guilty to one count of transportation of child pornography in interstate commerce, in violation of 18 U.S.C. § 2252(a)(1). The indictment alleged that he sent, over the internet, three image files of photographs. At sentencing, the district court focused its attention on one of the photographs. The court increased Mr. Turchen's sentence by four levels on the ground that the photograph was sadistic or masochistic. *See* U.S.S.G. § 2G2.2(b)(3). It also approved an upward departure in the criminal history category, from II to III, in order to represent more adequately his criminal history. On appeal, Mr. Turchen asserts that the district court abused its discretion in arriving at those determinations. For the reasons set forth in the following opinion, we affirm the judgment of the district court on these

sentencing issues but vacate a later sentencing ruling of that court that was entered on June 30, 1999, during the pendency of this appeal. We remand the case to the district court for the limited purpose of permitting that court to enter a new order to accomplish what it intended to accomplish by that order.

# I

# BACKGROUND

## A. Facts

Arthur Turchen received and transmitted, over the internet, photographs depicting minor and prepubescent children in sexually explicit acts with minors and adults. When he electronically mailed three graphic files to the wrong person, that person returned them to the internet service provider, which notified the Federal Bureau of Investigation ("FBI").[1]

Mr. Turchen pleaded guilty to one count of transporting (by means of his computer) child pornography in interstate commerce.[2] On June 30, 1998, he was sentenced to 63 months of imprisonment, 3 years of supervised release, and a criminal assessment of $100. He appeals the district court's in-

creases in his sentence: the 4–level enhancement under § 2G2.2(b)(3) and upward departure from Criminal History Category II to III under § 4A1.3.

## B. The Sentencing Determinations

At the sentencing hearing, the district court focused on a particular image in one of the graphic files. It depicts two nude adult males and a nude prepubescent male standing over a female child lying on a bed; they are urinating on her face and she is grimacing.[3] The court determined that the image warranted a four-level enhancement under § 2G2.2(b)(3) because it depicts sadistic and masochistic conduct. The court also concluded that such conduct, in the alternative, merited an upward departure under U.S.S.G. § 5K2.0. In its review of Mr. Turchen's criminal history category, the court also determined that the defendant's criminal history was not adequately represented by Category II. The court believed that Mr. Turchen should be held accountable for a prior adjudication of "not guilty by reason of mental defect" that had not been assessed in his criminal history points. Therefore it imposed an upward departure to take into

1. When the FBI searched Mr. Turchen's home with a warrant, it found a movable wall panel behind which were 37 disks with 297 photographs depicting child pornography.

2. The statute to which Mr. Turchen pleaded guilty, 18 U.S.C. § 2252(a)(1), for transporting by computer a visual depiction which "involves the use of a minor engaging in sexually explicit conduct," is one of a series of statutes in Chapter 110 of Title 18 of the United States Code concerning sexual exploitation of children. *See* 18 U.S.C. §§ 2251–2260. Those provisions criminalize producing, trafficking in, or possessing child pornography and are punishable under U.S.S.G. §§ 2G2.1–2G2.5. A defendant's base offense level as prescribed by the guidelines may be increased or decreased in accordance with the guidelines based on aggravating factors (such as the appearance of very young children in the material in issue) or mitigating factors (such as the defendant's acceptance of responsibility). Section 2G2.2 establishes a base offense level of 17 for all offenses that

involve trafficking in material involving the sexual exploitation of a minor. That level is increased when specific offense characteristics are found: (1) The material involved a prepubescent minor or a minor under the age of twelve years; (2) the offense involved distribution of the material; (3) the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence; (4) the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor; or (5) a computer was used for the transmission or advertising of the material. *See* § 2G2.2(b)(1)-(5). At issue in this case is § 2G2.2(b)(3).

3. As the parties stipulate, the picture shows the naked, prepubescent girl on a bed, lying flat on her back with her legs spread toward the camera. The girl's arms are to her side. Two men and a young boy are standing on the bed above the female child and are urinating on her face. The adults' faces are cropped out of the picture; the girl's face is turned to the side, and she is grimacing.

account this criminal behavior under U.S.S.G. §§ 4A1.3 and 5K2.0. Mr. Turchen appeals those two increases.

## II

## DISCUSSION

### A. U.S.S.G. § 2G2.2(b)(3)—"Sadistic or Masochistic Conduct"

Section 2G2.2(b)(3) provides: "If the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by 4 levels."

#### 1.

Mr. Turchen asserts that the district court erred in applying § 2G2.2(b)(3) because the photograph at issue is not sadistic, masochistic or violent. According to the defendant, every child pornography picture is, by its nature, a depiction that is · humiliating or degrading to the victim. He points out that other circuits require that a heightened factor be present within the depiction, such as extreme cruelty being directed against the victim in the photograph or a sado-masochistic act like the bondage of the victim. *See United States v. Delmarle*, 99 F.3d 80, 83 (2d Cir.1996) (concluding that an excessively cruel act that was quite likely to cause pain to the child victim was sadistic), *cert. denied*, 519 U.S. 1156, 117 S.Ct. 1097, 137 L.Ed.2d 230 (1997); *United States v. Kimbrough*, 69 F.3d 723, 734 (5th Cir.1995) (finding no clear error in enhancement for pornography pictures of female minor in bondage), *cert. denied*, 517 U.S. 1157, 116 S.Ct. 1547, 134 L.Ed.2d 650 (1996). Mr. Turchen argues that the image of men urinating on a grimacing girl does not depict an act that *per se* causes pain to the victim or is excessively cruel.

Mr. Turchen further asserts that the district court could not know the feelings of the people in the photograph and should not have speculated that the men were deriving pleasure at the infliction of this act or that the girl's grimace reflected

pain. According to Mr. Turchen, the girl's grimace reflects mere disgust or aversion rather than actual pain. Thus the depiction is not clearly sadistic, masochistic or violent, by any definition, and does not merit the 4–level enhancement under § 2G2.2(b)(3).

#### 2.

 Because Mr. Turchen has challenged whether the district court correctly applied the guidelines, we review de novo the court's decision to apply a specific guideline, in this case § 2G2.2(b)(3). *See United States· v. Ellison*, 113 F.3d 77, 79 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 235, 139 L.Ed.2d 166 (1997). We also conduct a plenary review of the court's interpretation of terms used in the guidelines, for such an interpretation involves a legal determination of the meaning of guidelines language. *See United States v. Eyoum*, 84 F.3d 1004, 1007 (7th Cir.), *cert. denied*, 519 U.S. 941, 117 S.Ct. 326, 136 L.Ed.2d 240 (1996). However, we review the district court's findings of fact only for clear error. *See United States v. Hall*, 142 F.3d 988, 997–98 (7th Cir.1998). We have reviewed the record, including the sentencing transcript and presentence report, along with the parties' briefs, and conclude that the district court did not err in either regard. We reached this conclusion by considering first the methodology employed by the district court at sentencing.

At the sentencing hearing, the district court recited the undisputed description of the image at issue, the description incorporated in the presentence report, and that report's unchallenged conclusion that the depiction is "certainly a very degrading act." R.30 at 12. To determine whether the depiction meets the special offense characteristics described in § 2G2.2(b)(3)—by portraying sadistic or masochistic conduct or other depictions of violence—the court examined definitions from various dictionaries and other

sources in making its evaluation.[4] The court commented that sadistic perversion involves "gratification ... obtained through cruelty" and masochism is "abnormal sexual passion in which one finds pleasure in ... being abused or dominated." *Id.* at 13. It concluded that sadism and masochism do not require the kind of violence "we normally consider" as violence. *Id.* at 14.

The district court then made factual findings about the image. It found that the "urinators were finding pleasure in abusing and cruelly treating a child who had not reached puberty and hence they had pleasure in abusing the person or dominating the person." *Id.* The court also described the little girl's reaction: "She certainly wasn't enjoying it. She was grimacing and attempting to turn her head away." *Id.* It concluded that the photograph "did indeed suggest an abnormal sexual passion," one that depicted mental anguish, mental violence and physical violence. *Id.* at 14–15. It specifically concluded that the conduct shown in the image was degrading, depraved, sadistic, masochistic, perverse, and a form of violence. In the written judgment of the court, in its "Statement of Reasons," the court repeated the definitions of sadism and masochism and concluded that the "grimacing prepubescent nude female reflects that pain which can be attributed to those actions of the urinating males and certainly must address that violence to which the Sentencing Commission referred when addressing sadism and masochistic behavior." R.22 at 8–9. The court then departed upward 4 levels under § 2G2.2(b)(3).

■ After our plenary review of the district court's decision to apply § 2G2.2(b)(3) to increase Mr. Turchen's sentence, we find ourselves in complete agreement with the court's methodology. When interpreting a provision of the sentencing guidelines, a court must begin with the text of the provision and the plain meaning of the words in the text. *See United States v. Norris,* 159 F.3d 926, 929 (5th Cir.1998), *cert. denied,* — U.S. —, 119 S.Ct. 1153, 143 L.Ed.2d 219 (1999); *United States v. Barakat,* 130 F.3d 1448, 1453 (11th Cir.1997). If a term in the guideline is not defined and does not have an established common-law meaning, it must be given its ordinary meaning. *See Chapman v. United States,* 500 U.S. 453, 461–62, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991); *United States v. Checora,* 175 F.3d 782, 790 (10th Cir.1999). We note that the Second Circuit, in *Delmarle,* used the Webster's Dictionary definition of "sadism" when analyzing a picture of a sexual act. *See* 99 F.3d at 83.

■ In light of those precepts, we believe the district court quite properly consulted definitions of sadism and masochism to confirm both the ordinary meanings of the terms and more clinically precise explanations. *See, e.g., Norris,* 159 F.3d at 929 (consulting dictionary for definition of "victim"). Those definitions make clear that sadistic and masochistic conduct includes sexual gratification which is purposefully degrading and humiliating, conduct that causes mental suffering or psychological or emotional injury in the victim. In fact, the Black's Law Dictionary definitions are helpful in demonstrating that violence is not necessarily found in such conduct. Black's offers these definitions:

> Masochism. A form of perversion in which sexual pleasure is heightened when one is beaten and maltreated at

---

4. The court noted a psychiatric definition of sadism, "sexual gratification gained through causing pain or degradation to others, extreme cruelty." It also consulted the Random House Dictionary, which defined sadomasochism as "sexual activity in which one person enjoys inflicting physical or mental suffering on another person." It researched the descriptions of "sexual perversion" by the Count de Sade and "masochism" by Leopold von Sachem–Mastic as well. The court concluded that sadistic or masochistic behavior can be without violence. R.30 at 13–14.

the hands of the other party; the opposite of sadism. Sexual perversion in which a member of one sex takes delight in being dominated, *even to the extent of violence or cruelty,* by one of the other sex.

Sadism. A form of satisfaction, commonly sexual, derived from inflicting harm on another. It is a type of insanity or mental disease. The opposite of masochism.

Black's Law Dictionary 879, 1198 (5th ed.1979) (emphasis added). We therefore agree with the district court's conclusion that sadism and masochism do not necessarily require violent conduct. We also believe that the image, depicting the objective act of males standing over and urinating onto the face of a grimacing prepubescent girl, portrays the infliction of harm, in fact violent harm, both physical and mental, on the child victim.[5] Perhaps the picture depicts pain or excessive cruelty of a different type from that found in the picture being reviewed by the Second Circuit in *Delmarle,* but it is no less "sadistic" within the meaning of § 2G2.2(b)(3). We have no difficulty coming to the same conclusion that the Second Circuit did: that the sexual act depicted here was also "quite likely to cause pain in one so young" and that "the subjection of a young child

[to that act] is excessively cruel and hence is sadistic." *Id.* at 83.

■ We hold that the district court's factual findings that the image depicted "sadistic or masochistic conduct" were certainly not clearly erroneous. Mr. Turchen disagreed with the court's findings that the girl's grimace reflected pain and that the males appeared to be experiencing enjoyment. He offered another view of the picture: The girl was merely disgusted and the men were not demonstrating any emotion. However, his presentation of a different perspective of the photograph is not enough; he must demonstrate the court's clear error in its finding. Mr. Turchen has failed to meet this burden. We believe that the district court did not clearly err in describing what it saw in the photograph and in concluding that such acts depict sadistic or masochistic conduct. We agree that the photograph at issue justifies the upward departure and therefore uphold the district court's application of § 2G2.2(b)(3).

The district court also offered an alternative reason for an upward departure of Mr. Turchen's sentence; it determined that the enhancement would be allowed by a departure under § 5K2.0,[6] when there

---

5. Mr. Turchen attempts to distinguish between the act of defecating on a victim, which he concedes would qualify as excessively cruel, and the act of urinating on a victim, which he claims is not excessively cruel. We reject such a distinction. Both are perverse and cruel in the extreme.

6. Section 5K2.0 is a policy statement on grounds for departure. It states, in pertinent part:

Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Circumstances that may warrant departure from the guideline range

pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis. Nonetheless, this subpart seeks to aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines. Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court. Similarly, the court may depart from the guidelines, even though the reason for departure is taken into consideration in determining the guideline range (e.g., as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the

exists an aggravating or mitigating circumstance of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. Because we hold that the court did not clearly err in applying § 2G2.2(b)(3) to increase Mr. Turchen's sentence, we need not address the alternate method of enhancing his sentence.

## B. U.S.S.G. § 4A1.3: Upward Departure of Criminal History Category

Section 4A1.3 is a policy statement concerning the adequacy of the criminal history category. It states:

If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning:

(a) prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses);

(b) prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions;

(c) prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;

(d) whether the defendant was pending trial or sentencing on another charge at the time of the instant offense;

(e) *prior similar adult criminal conduct not resulting in a criminal conviction.*

U.S.S.G. § 4A1.3 (emphasis added).[7] The district court raised Mr. Turchen's criminal history category from II to III by counting a prior adjudication of "not guilty by reason of mental defect or disease."[8] The court decided to count that unconvicted criminal conduct under § 4A1.3(e) (and, in the alternative, under § 5K2.0) based on the reliable information that "the presiding court held the defendant accountable by his placement at Mendota Mental Health Institution for an indeterminate time not to exceed 15 years conviction." R.22 at 7. Because this "not guilty" adjudication was not assessed criminal history points, the criminal history category did not adequately reflect the seriousness of Mr. Turchen's past criminal conduct. The district court

weight attached to that factor under the guidelines is inadequate or excessive.

7. The criminal history category guideline continues:

A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes. Examples might include the case of a defendant who (1) had several previous foreign sentences for serious offenses, (2) had received a prior consolidated sentence of ten years for a series of serious assaults, (3) had a similar instance of large scale fraudulent misconduct established by an adjudication in a Securities and Exchange Commission enforcement proceeding, (4) committed the instant offense while on bail or pretrial release for another serious offense, or (5) for appropriate reasons, such as cooperation in the prosecution of other defendants, had previously received an extremely lenient sentence for a serious offense. The court may, after a review of all the relevant information, conclude that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category, and therefore consider an upward departure from the guidelines. However, a prior arrest record itself shall not be considered under § 4A1.3.
U.S.S.G. § 4A1.3.

8. The circumstances underlying that adjudication are that, in 1990, at a rest stop beside a road, Mr. Turchen shot a sleeping motorist in the throat; he shot the man twice more as the victim staggered from the car, and left him to die. The man survived and Mr. Turchen was charged with attempted first degree murder. He was adjudged not guilty by reason of mental defect and was committed to a mental health facility. One year later he was released.

relied on *United States v. McKenley*, 895 F.2d 184, 186–87 (4th Cir.1990), which held that an acquittal by reason of insanity may be considered in assessing whether a defendant's criminal history category adequately reflects a defendant's past criminal conduct or his potential for future criminal behavior. The district court then concluded:

> This past unconvicted conduct certainly indicates dangerousness, violence and depravity. There is nothing in the record to persuade this Court to the contrary. Only by taking such conduct into account can this Court fix a sentence which appropriately accommodates the goal of the Guidelines to protect society.

R.22 at 8.

■ Mr. Turchen concedes that the court properly could consider his prior adjudication of not guilty by reason of mental defect. *See United States v. Carter*, 111 F.3d 509, 514 (7th Cir.1997) (noting that charges on which a defendant has been acquitted or for which charges have been dismissed can be considered under § 4A1.3 as long as the government's evidence is reliable); *accord United States v. Watts*, 519 U.S. 148, 154, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam) ("[W]e are convinced that a sentencing court may consider conduct of which a defendant has been acquitted."). Nor does he challenge the degree of departure. However, Mr. Turchen insists that the court should have considered his extensive treatment and rehabilitation and the fact that he has not exhibited any dangerousness of that magnitude now. He points out that his long countervailing record overcame any presumption of dangerousness. He also comments briefly that his shooting a man eight years ago did not show a violence and depravity similar to his possessing and transmitting the photo at issue. He urges this court to find that the application of § 4A1.3 was an abuse of the district court's discretion.

■ We usually review a district court's decision to depart in the criminal history category for an abuse of discretion. *See United States v. Trigg*, 119 F.3d 493, 502 (7th Cir.1997). However, Mr. Turchen's assertion that the district court gave insufficient weight to his long-term rehabilitation, we note, was not raised in his objections to the presentence report or to the district court at sentencing. Therefore we consider only whether the district court committed plain error in departing one criminal history category. *See United States v. De Angelo*, 167 F.3d 1167, 1169–70 (7th Cir.1999). We find no error, plain or otherwise. The guideline states that a departure is warranted "when the criminal history category significantly underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." In other words, the court had to find only one of the two disjunctive elements of § 4A1.3: either (a) that Mr. Turchen's criminal history inadequately reflects his true criminal past (a finding Mr. Turchen does not challenge); or (b) that Mr. Turchen's criminal history inadequately reflects the probability of recidivism. The court found the first prong; Mr. Turchen did not present evidence, or seek a finding, on the second prong. We hold that no error occurred. If, as Mr. Turchen assumes, the district court based the increase on the inadequacy of his criminal history score, that basis was a sufficient predicate for the court's action. The government also points out that this record reveals that Mr. Turchen posed a risk of recidivism and remained a danger to the community. His child pornography distribution over the internet and his collection of pornography in his home, amassed after his "rehabilitation," show that there is no error, plain or clear, in the court's way of looking at the undisputed facts. Indeed, the district court's explicit mention of its obligation "to protect society" suggests strongly that the court was concerned about the possibility of recidivism.

As for Mr. Turchen's cursory mention that the attempted murder and the trans-

mission of sadistic pornographic images do not show a similar violence, the district court was entitled to conclude that there is a sufficient similarity between the two acts. The district court determined that, just as the picture at issue here exhibited sadistic tendencies, the circumstances surrounding the shooting of a sleeping person, *see supra* note 8, exhibited those same tendencies.

Because we believe that the district court was entitled to impose an upward departure in the criminal history category under § 4A1.3, we need not consider whether the increase could have been imposed under § 5K2.0.

## C. District Court's Grant of Government's Rule 35(b) Motion

During the pendency of this appeal, on June 9, 1999, the government filed a motion in the district court for reduction of Mr. Turchen's sentence pursuant to Federal Rule of Criminal Procedure 35(b). On June 30, 1999, the district court granted the motion, departed downward two levels (from a total offense level of 22 to one of 20) and reduced Mr. Turchen's sentence to 51 months in prison. The district court was without jurisdiction to take this action.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982); *see also United States v. Ienco*, 126 F.3d 1016, 1018 (7th Cir.1997); *Kusay v. United States*, 62 F.3d 192, 193–94 (7th Cir.1995). Once the notice of appeal has been filed, the district court lacks jurisdiction to rule on a Rule 35(b) motion. *See United States v. Bingham*, 10 F.3d 404, 405 (7th Cir.1993) (per curiam); *United States v. Kerley*, 838 F.2d 932, 941 (7th Cir.1988). The district court's granting of the government's Rule 35(b) motion impermissibly altered the very judgment this court is reviewing on appeal.

Because the district court lacked adjudicatory power, the proceedings of June 30, 1999, are a nullity. *See Kusay*, 62 F.3d at 196. Therefore the district court's order of June 30 is vacated. Although we affirm the original judgment of the district court in all respects, we remand the case to the district court for the limited purpose of permitting the district court to issue a new order to effect the change in sentence that the court attempted to accomplish in its order of June 30, 1999.

## Conclusion

For the foregoing reasons, we affirm Mr. Turchen's sentence based on the four-level enhancement under § 2G2.2(b)(3) and on the upward departure in criminal history category under § 4A1.3. However, we vacate the district court's order of June 30, 1999, and remand the case for the limited purpose of permitting the district court to enter a new order that will accomplish the reduction that it intended to effect by its order of June 30, 1999.

AFFIRMED IN PART and

VACATED AND REMANDED IN PART.