In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3364

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT RODGERS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 09 CR 50001—**Frederick J. Kapala**, *Judge.*

ARGUED APRIL 2, 2010—DECIDED JULY 9, 2010

Before FLAUM, WOOD, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* The defendant, Robert Rodgers, appeals his sentence for possession of child pornography. Rodgers pleaded guilty to possessing over 2,200 images and videos of child pornography. He was sentenced to 78 months of imprisonment, the low end of the guideline range determined by the district court. Rodgers raises three challenges to the manner in which his guideline range was calculated. First, he argues that an en-

hancement to his guideline range imposed because of the number of images he possessed is unconstitutional because it was legislated directly by Congress. Second, he argues that the sentencing enhancement for sadistic, masochistic, or violent images impermissibly double-counts the conduct already covered by the base offense level of the applicable guideline. Finally, he argues that the government failed to prove these enhancements because the evidence relied upon was given in violation of the "advocate-witness rule." Finding these arguments without merit, we affirm.

## I. Background

On January 6, 2009, the government charged Rodgers with possessing images of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). On February 20, 2009, Rodgers pleaded guilty pursuant to a written plea agreement.

The facts underlying the offense were laid out in paragraphs six and seven of the agreement. Rodgers admitted that he possessed, through a commercial website, images of child pornography over 2,200 times between January 18 and January 30, 2006, and that he "wiped" his computer of evidence of his possession of child pornography on a daily basis. He also admitted, as relevant conduct, that he possessed multiple images and a video of unsuccessfully deleted child pornography on October 18, 2006, and that he had viewed child pornography on two of his business computers and deleted evidence from those computers of that possession. The plea agreement did not

describe the specific nature of the images and videos at issue, other than that they constituted child pornography as defined in 18 U.S.C. § 2256(8)(A).

After Rodgers pleaded guilty, the court ordered the government to submit its version of the offense to the probation office within 14 days and the defendant to submit a version of the offense within 21 days. The government submitted a version of the offense that adopted the factual basis and relevant conduct described in paragraphs six and seven of the plea agreement and advised the probation officer to contact the Assistant United States Attorney (AUSA) working on the case if additional information was needed. Rodgers did not submit his own version of the offense or object to the government's version.

While preparing the report, the probation officer contacted the AUSA assigned to the case to gather additional information about the offense. In addition to inquiring about several other details of Rodgers's offense, the probation officer asked for the government's position as to how the images and videos possessed by Rodgers portrayed sadistic or masochistic conduct or other depictions of violence. The AUSA responded to these inquiries based on a review of the investigative reports and evidence, in consultation with the case agent. The information was then included in the presentence report (PSR).

After the PSR was prepared, it was distributed to counsel for their consideration. The PSR stated that the description of the offense conduct came from the facts in the plea agreement and the additional information

provided by the AUSA assigned to the case. Rodgers did not object to the factual findings contained in the PSR.

The sentencing hearing was held on September 4, 2009. In response to a specific question from the court, Rodgers's counsel stated that they had no objection to the factual findings in the PSR. The court then adopted the PSR's findings and its guidelines calculation. Rodgers objected to the five-level enhancement for the number of images under U.S.S.G. § 2G2.2(b)(7)(D) and the two-level enhancement for the use of a computer under U.S.S.G. § 2G2.2(b)(6). The district court rejected these arguments and sentenced Rodgers to 78 months of imprisonment, the bottom of the guideline range.

## II.  Analysis

Rodgers first argues that U.S.S.G. § 2G2.2 is unconstitutional because it was legislated directly by Congress, rather than promulgated by the United States Sentencing Commission based on empirical data. This is a question of law which we review de novo. *See United States v. Nagel*, 559 F.3d 756, 759 (7th Cir. 2009).

Rodgers takes the position that *Mistretta v. United States*, 488 U.S. 361 (1989), requires that a sentencing guideline be promulgated by the United States Sentencing Commission in order for it to be constitutional. He acknowledges that *Mistretta* does not state this directly, but argues that it follows from language in the opinion stating that the reputation of the judiciary "may not be borrowed by the political Branches to cloak their work in the neutral colors of judicial action." *Id.* at 407.

The guideline at issue here derives from the Protect Act, Pub. L. 108-21, § 401(i). Rodgers criticizes the Protect Act for adopting this guideline without the benefit of the Sentencing Commission's usual empirical study, adopting an argument developed by federal defender Tory Stabenow in a 2008 paper, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*. We have previously considered these arguments and concluded that regardless of whether a district court *may* consider the empirical basis of U.S.S.G. § 2G2.2 when crafting a sentence, there is no requirement that a district court *must* do so. *See United States v. Huffstatler*, 571 F.3d 620, 623 (7th Cir. 2009). Rodgers attempts to distinguish *Huffstatler* by arguing that the *Huffstatler* court did not consider his argument that *Mistretta* forbids Congress from directly legislating sentencing guidelines.

Rodgers's argument rests on a mischaracterization of *Mistretta*. In *Mistretta*, the Supreme Court rejected a challenge to the then-mandatory guideline system based on the theory that the guidelines delegated too much legislative authority to the Sentencing Commission and violated the separation of powers by requiring federal judges to serve on the Commission. 488 U.S. at 412. In concluding that neither the nondelegation doctrine nor the separation-of-powers doctrine prohibited the legislature from seeking the advice of judges when formulating guideline ranges, the Court relied on the fact that Congress had constrained the discretion of the Commission. For example, the Court noted that Congress had mandated that the guidelines "require a term of

confinement at or near the statutory maximum for certain crimes of violence and for drug offenses, particularly when committed by recidivists." *Id.* at 376. Thus, the starting point for the *Mistretta* opinion was that Congress could legitimately create sentencing guidelines, just as it creates the statutory maximum and minimum sentences. *See also United States v. LaBonte*, 520 U.S. 751, 757 (1997) (holding that the Sentencing Commission "must bow to the specific directives of Congress"). Indeed, the dissent in *Mistretta* argued that *only* Congress could validly promulgate guidelines. 488 U.S. at 413 (Scalia, J., dissenting). If legislators do not "cloak their work" in neutral garb of the judiciary when they ask judges to serve on a sentencing commission while substantially constraining the work of that commission, surely they do not do so when they bypass the commission altogether and legislate directly.

That is not to say that the provenance of a particular guideline is wholly irrelevant to sentencing. Now that the guidelines are advisory, a district court may vary from the guidelines when it concludes that they do not reflect "empirical data and national experience." *Huffstatler*, 571 F.3d at 623 (citing *Kimbrough v. United States*, 552 U.S. 85 (2007)). Just as in *Huffstatler*, however, we need not now decide whether a district court may vary from the child pornography guidelines on policy grounds. The district court noted on the record that it would chose to apply § 2G2.2 regardless of whether it had the freedom to depart on policy grounds. Just as a district court may still validly apply the crack guidelines, even though it has discretion to depart from them, a

district court may choose to apply the child pornography guidelines despite their somewhat unusual provenance. *Huffstatler*, 571 F.3d at 624.

Rodgers's next argument is that the sentencing enhancement for sadistic or masochistic conduct or other depictions of violence, which is contained in U.S.S.G. § 2G.2(b)(4), impermissibly double counts conduct already taken into account by the base offense level for possessing child pornography. He urges us to overrule *United States v. Myers*, 355 F.3d 1040 (7th Cir. 2004), in which we rejected this argument.

At the outset, we note that Rodgers has forfeited this issue by not raising it at sentencing. In the district court, Rodgers did not argue that applying U.S.S.G. § 2G.2(b)(4) would constitute impermissible double counting. Thus, we review for plain error, asking whether (1) an error occurred, (2) the error is plain, and (3) the error affected the defendant's substantial rights. *United States v. Wainwright*, 509 F.3d 812, 815 (7th Cir. 2007); *United States v. Olano*, 507 U.S. 725, 731-32 (1993).

We can stop at the first inquiry, as no error occurred. We decline Rodgers's invitation to revisit *Myers*. In our circuit, impermissible double counting occurs "only if the offense itself *necessarily* includes the same conduct as the enhancement." *United States v. Senn*, 129 F.3d 886, 897 (7th Cir. 1997) (emphasis in original); *see also United States v. Bell*, 598 F.3d 366, 372-73 (7th Cir. 2010). The relevant statute, 18 U.S.C. § 2256(8)(a), defines "child pornography" to include "any visual depiction . . . of sexually explicit conduct, where the production of such visual depiction

involves the use of a minor engaged in sexually explicit conduct." "Sexually explicit conduct," in turn, is defined as "sexual intercourse . . . ; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person." *Id.* § 2256(8)(2)(a). We have found that § 2G2.2(b)(4) applies to acts likely to cause physical pain, *Myers*, 355 F.3d at 1043-44, as well as "sexual gratification which is purposefully degrading and humiliating, conduct which causes mental suffering or psychological or emotional injury in the victim." *United States v. Turchen*, 187 F.3d 735, 739 (7th Cir. 1999). Rodgers also suggests that *Turchen* holds that any depiction of an "abnormal sexual passion" would trigger § 2G2.2(b)(4), but this argument rests on a blatant misquotation of *Turchen*. The full quotation defines masochism as an "abnormal sexual passion in which one finds pleasure in . . . being abused or dominated." 187 F.3d at 739. Nowhere does *Turchen* suggest that all "abnormal sexual passions" trigger the enhancement.

A straightforward reading of *Turchen* and 18 U.S.C. § 2256(8)(2)(a) makes clear that the statute covers more conduct than the enhancement. An image of a minor alone could constitute "lascivious exhibition of the genitals" without additionally depicting conduct that is likely to cause physical pain or is purposefully humiliating and degrading. *See Myers*, 355 F.3d at 1044. Thus, the application of U.S.S.G. § 2G2.2(b)(4) properly took into account aggravating circumstances, not the base offense conduct.

Rodgers's final argument is that the district court improperly relied on evidence not in the record in reaching

his sentence. He objects that portions of the PSR came from the AUSA's review of the case files and argues that this violates the general prohibition against a lawyer acting as both counsel and witness in the same case. *See United States v. Ewing*, 979 F.2d 1234 (7th Cir. 1992). Without the evidence from the AUSA that was included in the PSR, Rodgers argues, there is nothing to support the district court's application of the four-level enhancement for sadistic or masochistic material.

Rodgers's argument is waived, and rests on a misunderstanding of the sentencing process. Rodgers filed no objections to the factual findings in the PSR. When asked on the record at sentencing if he had any such objections, his counsel stated, "No, we do not." This amounts to the intentional relinquishment of a known right which extinguishes any error and precludes appellate review. *Olano*, 507 U.S. at 733. A district court is permitted to adopt the facts of the PSR as support for its findings and conclusions when the defendant fails to alert the court to potentially inaccurate or unreliable information. *See United States v. Sonsalla*, 241 F.3d 904, 907 (7th Cir. 2001). The AUSA never testified in this case, so *Ewing* is inapplicable. Rodgers's argument is better understood as a claim that the record did not support the sentencing court's factual findings. But to the extent that the record is lacking in this case, it is only because Rodgers relieved the government of the burden of introducing the photographs and videos into evidence. This was likely a strategic choice—Rodgers had many supporters in attendance at his hearing, and he may also have been attempting to gain the sympathy of the district court by cooperating. Once having waived a

challenge to the factual basis of the PSR, Rodgers cannot now seek to invalidate his sentence for lack of evidentiary support.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.