In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2696

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARIO MESCHINO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 469—**Charles P. Kocoras**, *Judge.*

ARGUED FEBRUARY 23, 2011—DECIDED JULY 12, 2011

Before KANNE, WOOD, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Mario Meschino pleaded guilty to distributing and possessing child pornography. He received a 360-month sentence, the low end of the sentencing guidelines range but the statutory maximum. Among many other sentencing enhancements, Meschino received a five-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(5) for engaging in a pattern of sexual abuse of a minor. This enhancement was based on testimony

from Meschino's niece that Meschino had sexually abused her for approximately ten years beginning when she was about four years old. Meschino appeals, arguing that the district court should not have prevented him from cross-examining his niece about a recent rape allegation she made against a different family member. He also contends that another enhancement he received under U.S.S.G. § 2G2.2(b)(7) for possessing more than 600 images of child pornography violates separation-of-powers principles. Finally, he claims his sentence is substantively unreasonable under 18 U.S.C. § 3553(a).

We affirm. The district court was well within its discretion in barring Meschino from cross-examining his niece about an unrelated rape allegation. Our precedent in *United States v. Rodgers*, 610 F.3d 975 (7th Cir. 2010), forecloses Meschino's challenge to § 2G2.2(b)(7), the number-of-images enhancement. Finally, Meschino's sentence is not unreasonable. The district court imposed the statutory maximum—but within-guidelines—sentence after meaningful evaluation of the § 3553(a) factors and based on the presence of multiple serious aggravating circumstances.

## I. Background

At the time of his arrest for possession of child pornography, Mario Meschino was 41 years old and worked as a school-bus driver for elementary- and middle-school children in and around Plainfield, Illinois. The FBI became aware of Meschino through its investigation of another offender who had exchanged child pornography

with Meschino online. FBI agents executed a search warrant at Meschino's home, where they found over 1,000 images and videos of child pornography on various hard drives and disks. These included images of young children, including toddlers, being raped, bound, or sexually tortured. Meschino's computer also contained saved chat-room conversations in which Meschino talked about having sexually assaulted his niece when she was a child. Additionally, Meschino possessed hundreds of nonpornographic pictures he had taken of children on his school bus and in his neighborhood. After the FBI arrested him, Meschino permitted the FBI to search his e-mail accounts. In one of his e-mails, Meschino had attached an image of a naked prepubescent female performing oral sex on an adult male. In the text of that e-mail, Meschino expressed interest in trading more such images with his e-mail correspondent.

Meschino pleaded guilty to knowingly distributing child pornography in violation of 18 U.S.C. § 2252A(a)(1) and knowingly possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The government dismissed two other counts (one count of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and another count of knowingly possessing child pornography).

At sentencing Meschino's niece, then 21 years old, testified that Meschino had sexually abused her repeatedly over a ten-year period, starting when she was about 4 years old and continuing until she was about 14. During this time, the niece, whom we will refer to as

"Victim A," lived with her grandparents (Meschino's parents) along with Meschino. She testified that Meschino made her perform oral sex on him hundreds of times, and a few times he also performed oral sex on her and vaginally penetrated her. When she was about 10 or 11, Meschino also took pictures of her naked.

Victim A testified that when she was in high school, she confided in her stepsister about Meschino's repeated sexual abuse. Her stepsister then revealed this information to Victim A's family. Victim A had not expected this, and when her father asked if it was true that Meschino had sexually abused her, she denied it. She said she did so because her father had reacted angrily and because she did not feel comfortable talking to him about sexual abuse. Only later, after learning of Meschino's arrest, did Victim A feel ready to talk to her family about the abuse and report it to the FBI. She testified that she did not report the abuse earlier because she felt afraid and embarrassed.

On cross-examination Meschino sought to elicit testimony about a report Victim A had made a few months earlier alleging that her stepbrother had raped her. Meschino claimed that Victim A had later contradicted herself on the rape allegation, thereby undermining her overall credibility. The district court was skeptical that Meschino had a good-faith basis for contending that the recent allegation was false. The judge also thought the allegation was too factually and temporally removed from Victim A's abuse by Meschino years earlier. For these reasons the court barred Meschino from cross-examining Victim A on this subject.

Meschino was, however, permitted to cross-examine Victim A on other matters bearing on her credibility. Defense counsel drew attention to the fact that several months after reporting Meschino's abuse to the FBI, Victim A moved back into her grandparents' home even though Meschino was also living there on pretrial home detention. Victim A explained that she did not want to live there but she had nowhere else to go. Meschino also cross-examined Victim A about monetary assistance she received from the government after she reported Meschino's abuse, first to enable her to live in student housing at a community college and later to help her relocate to another state. Additionally, Victim A acknowledged that several other relatives lived at various times in her grandparents' house during the period in which Meschino abused her, yet none of them seemed to know about the abuse.

Other witnesses submitted victim-impact statements in writing and also in court at the sentencing hearing. "Victim B," a childhood friend of Victim A, testified that for several years beginning when she was 14 years old, Meschino showed her pornography on his computer, groped her, and made sexually suggestive comments to her. Two of Meschino's neighbors spoke about the emotional harm they and their children experienced after learning that Meschino had surreptitiously photographed their children playing in their yards.

Meschino's base offense level was 22, and his criminal history category was I. The court applied six guideline enhancements: a five-level enhancement for a pattern

of activity involving sexual abuse of a minor, U.S.S.G. § 2G2.2(b)(5); a five-level enhancement for possessing 600 or more images, *id.* § 2G2.2(b)(7)(D); a four-level enhancement for material portraying sadistic or masochistic conduct, *id.* § 2G2.2(b)(4); a two-level enhancement for conduct involving a prepubescent minor, *id.* § 2G2.2(b)(2); a five-level enhancement for receiving or expecting to receive a thing of value in return for his distribution of the pornography, *id.* § 2G2.2(b)(3)(B); and a two-level enhancement for using a computer in the offense, *id.* § 2G2.2(b)(6). Meschino also received a three-level reduction for accepting responsibility, *id.* § 3E1.1(a) and (b). All in all, his total offense level was 42, corresponding to an advisory guidelines range of 360 months to life imprisonment. The court sentenced Meschino to the statutory maximums, 240 months on the distribution count and 120 months on the possession count, to be served consecutively. *See* U.S.S.G. § 5G1.2(d).

## II. Discussion

Meschino raises three arguments on appeal. First, he challenges the district court's refusal to permit him to cross-examine Victim A about her recent allegation of sexual assault against her stepbrother. Second, he contends that Congress violated the separation-of-powers doctrine by directly promulgating § 2G2.2(b)(7). Third, he claims that his 120-month sentence on the possession count is substantively unreasonable. None of these arguments has merit.

## A. Cross-examination of Victim A

Meschino asserts that he should have been permitted to cross-examine Victim A about her rape allegation against her stepbrother because she reportedly told her father the day after the alleged rape that she "wasn't sure" or "didn't know" whether it had occurred. This equivocation, he contends, would have undermined her credibility.

We review the district court's exclusion of evidence during a sentencing hearing for abuse of discretion. *See United States v. Szakacs*, 212 F.3d 344, 347 (7th Cir. 2000).[1] Generally, "evidentiary standards are [more] relaxed at sentencing" than at trial. *See United States v. Nunez*, 627 F.3d 274, 281 (7th Cir. 2010). And even during a trial, a district judge has "'wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about . . . harassment'" or if a line of questioning would be "'only marginally relevant.'" *United States v. Vasquez*, 635 F.3d 889, 894 (7th Cir. 2011) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). In sexual-abuse cases, the district court can prevent a defendant from introducing evidence that his accuser made a different, allegedly false accusation if "[t]he evidence of falsity is weak," "the prior incident is unrelated to the charged

---

[1] Meschino contends that de novo review applies because the district court's ruling implicated his Sixth Amendment confrontation-clause rights; we have held, however, that the confrontation clause does not apply to sentencing hearings. *See United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005).

conduct," and "the defendant intends to use the evidence as part of an attack on the 'general credibility' of the witness." *See United States v. Tail*, 459 F.3d 854, 860-61 (8th Cir. 2006). The district court had ample discretion to limit Meschino's cross-examination, and its reasons for doing so here were entirely valid.

For one thing, the court observed that Meschino had no "concrete information" to support his contention that Victim A was lying about her allegation against her stepbrother; Meschino offered only a negative inference drawn from an ambiguous statement Victim A reportedly made to her father that day after the alleged assault. In these circumstances the judge was properly concerned that Meschino was trying to "go around fishing on cross-examination hoping . . . to hit the jackpot" while harassing Victim A, "dirty[ing] her up as much as [he] could." Furthermore, it was reasonable for the district court to conclude that even if there was some reason to doubt Victim A's accusation against her stepbrother, this line of inquiry had little bearing on her testimony against Meschino because it was so dissimilar, concerned a different abuser, very different circumstances, and a singular event that took place six years after Meschino's decade-long abuse had stopped. This was a reasonable exercise of discretion.

Moreover, Meschino's desired line of cross-examination would have done little to counter the other evidence that firmly convinced the district court that Victim A's testimony against Meschino was truthful. Most importantly, her testimony was corroborated by Meschino's

own chat-room conversations and was consistent with Victim B's testimony about Meschino's sexual advances toward her when she was a teenager. The district court also observed that there was no apparent motive for Victim A to fabricate her testimony against Meschino. Meschino vigorously challenged Victim A's credibility via several other lines of cross-examination, but the judge simply didn't "have any doubt" about her testimony that Meschino had sexually abused her.

In short, the district court properly limited cross-examination because Meschino had little basis for asserting that Victim A's recent allegations were false, this line of inquiry would have been harassing to Victim A, and its probative value would have been slight.

## B. Sentencing Enhancement Under U.S.S.G. § 2G2.2(b)(7)

Meschino objects to § 2G2.2(b)(7) because Congress passed it without the input of the Sentencing Commission. This is an issue of law, so we review it de novo. *See United States v. Nagel*, 559 F.3d 756, 759 (7th Cir. 2009). Meschino contends that in directly promulgating § 2G2.2(b)(7), Congress violated the separation-of-powers limits established in *Mistretta v. United States*, 488 U.S. 361 (1989). We rejected precisely this argument in *United States v. Rodgers*, 610 F.3d at 977-78, explaining that it "rests on a mischaracterization of *Mistretta*." It is well-established that "Congress, of course, has the power to fix the sentence for a federal crime, . . . and the scope of judicial discretion with respect to a sentence is

subject to congressional control." *Mistretta*, 488 U.S. at 364 (internal citation omitted). The issue in *Mistretta* was whether Congress, by directing the Sentencing Commission to promulgate sentencing guidelines, "delegated too much legislative authority to the Sentencing Commission and violated the separation of powers by requiring federal judges to serve on the Commission." *Rodgers*, 610 F.3d at 977 (citing *Mistretta*, 488 U.S. at 412). The Supreme Court rejected the constitutional challenge to the guidelines regime because Congress had constrained the discretion of the Sentencing Commission. *Id.* As we explained in *Rodgers*, *Mistretta* does not undermine, but rather proceeds from, the principle that the authority to set sentencing policy originally rests with Congress, meaning that Congress is free to "bypass the commission altogether and legislate directly" if it so chooses. *Id.* at 978. We decline to revisit *Rodgers.*

## C. Substantive Reasonableness

A within-guidelines sentence is presumptively reasonable on appeal. *Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Nurek*, 578 F.3d 618, 626 (7th Cir. 2009). Meschino contends that his 120-month sentence on the possession count is substantively unreasonable for two reasons. First, he claims that the four-level enhancement he received under § 2G2.2(b)(4) for possessing material portraying sadistic or masochistic conduct produced a guidelines range that was too harsh under the circumstances because he never specifically sought images of this nature. He says he "traded with

unknown persons and had no idea what type of images he would receive until he opened them." The Sentencing Commission deems this irrelevant. *See* U.S.S.G. § 2G2.2(b)(4) cmt. n.2 (The enhancement applies "regardless of whether the defendant specifically intended to possess, access with intent to view, receive, or distribute such materials."). Accordingly, the district court quite properly found that even if Meschino did not actively seek such material, the enhancement applied because he "looked at it, possessed it, and stored it, hid it, and kept it." It was not unreasonable for the court to agree that Meschino should be held fully culpable for possession of this particularly harmful form of child pornography.

Second, Meschino argues that the enhancements under § 2G2.2 lack support in empirical data. We have recognized that the guidelines for crimes involving sexual exploitation of a minor have been criticized for being "crafted without the benefit of the Sentencing Commission's usual empirical study" and that this criticism "has been gaining traction" in some district courts that have chosen to depart from the guidelines. *United States v. Huffstatler*, 571 F.3d 620, 622 (7th Cir. 2009). But § 2G2.2's "somewhat unusual provenance" in no way obligates a judge to depart downward. *Rodgers*, 610 F.3d at 978; *see also United States v. Maulding*, 627 F.3d 285, 287-88 (7th Cir. 2010); *Huffstatler*, 571 F.3d at 624. "What matters is whether the sentencing judge correctly calculated the guidelines range and evaluated the § 3553(a) factors to arrive at a reasonable sentence." *Maulding*, 627 F.3d at 288.

The district court had no reservations about applying the guidelines in this case. The judge recognized that he was free to vary if he "severely disagree[d]" with the guidelines but found that "in this instance . . . they're quite relevant and need to be honored." The judge considered Meschino's abuse of his niece, his extensive volume of child pornography, the "disturbing" and "terrifying" nature of some of the images, and his bragging in chat-room conversations about sexually abusing his niece and taking pictures of children in his neighborhood and on the bus. These are serious aggravating circumstances, and it was hardly unreasonable for the judge to emphasize them in weighing the § 3553(a) factors. Meschino has not overcome the presumption that his within-guidelines sentence is reasonable.

AFFIRMED.